482 A.2d 935

**Arthur J. LEVIN, Appellant/Cross-Appellee,**

**v.**

**Ida D. LEVIN, Appellee/Cross-Appellant.**

**No. 1659 Sept. Term, 1983.**

Court of Special Appeals of Maryland.

Nov. 7, 1984.

326

Joseph Zitomer, Silver Spring, for appellant/cross-appellee.

Edward M. Statland, Washington, D.C., for appellee/cross-appellant.

Argued before WEANT, ALPERT and BLOOM, JJ.

WEANT, Judge.

This appeal attacks the correctness of a decision by the Circuit Court for Anne Arundel County, interpreting a provision in a separation agreement involving alimony payments. The appellant and cross-appellee, Arthur J. Levin (husband), assails a final order, dated 13 September 1983, requiring him to pay the appellee and cross-appellant, Ida D. Levin (wife), $250 a month in alimony, effective 1 June 1982. He tenders five allegations of error in an effort to buttress his position:

I. The Chancellor erred in holding that the definition of "income"[,] as used in the separation agreement, included the interest or dividends portion of the retirement fund, which was expressly excepted by the definition.

II. The Chancellor erred in holding that the definition of "income"[,] as used in the separation agreement, included that portion of the retirement "earned" before the effective date of the separation agreement.

III. The Chancellor erred in holding that the parties intended by their agreement to share ex-husband's retirement benefits.

IV. The Chancellor abused his discretion in awarding, rather than terminating, alimony, in view of the change of circumstances of this case.

V. The Chancellor erred in increasing alimony from $200 to $250 per month in order to compensate for his inability to award counsel fees.

The wife cross-appeals, questioning:

A. Whether an ex-husband's receipts under his former employer's pension and retirement plan constitutes "income" as that term is defined in a separation agreement and divorce decree ... as being "wages, salaries, fees, commissions or remuneration for work performed or services rendered."

B. Whether the court abused its discretion in modifying an alimony obligation retroactive to a time period prior to the ex-husband's petition to modify the alimony obligation, when the ex-husband had in fact received and retained the income and offered no evidence of an inability to pay the existing alimony obligation according to the agreed and court-ordered formula.

C. Whether the Court's original award to an ex-wife of attorneys['] fees, made upon determination of her petition to enforce an existing alimony order was unauthorized, when the ex-wife's petition was filed in an existing divorce case that was originally filed in 1972, before the legislative enactment of Maryland Code Art. 16, § 3, but her petition was filed (1982) after the effective date of that statute.

D. Whether the Court's modification of an alimony order constituted an exercise of discretion arbitrarily used or a judgment so clearly wrong that it should be disturbed on appeal.

E. Whether the trial court adequately complied with Maryland Rule 18 in providing a brief statement of the grounds for its decision.

Because the issues raised by the parties tend to overlap, they will be combined whenever practical in our discussion.

On 26 March 1971, the thirty-one year marriage of Arthur J. Levin and Ida D. Levin ended, the *coup de grace* being administered by judicial decree. The parties' separation agreement, wherein Arthur agreed to pay Ida as alimony the equivalent of twenty-five percent of his gross [1] "income" as defined in the agreement, was incorporated in the circuit court's order.

By reason of a previous period of employment with the B'nai B'rith Anti-Defamation League (ADL) the husband acquired certain "vested" rights in a pension plan maintained by his former employer; he would not, however, be eligible to collect those benefits until age sixty-five. No specific reference to the ADL pension was contained in either the parties' separation agreement or in the court's order. The husband worked for Potomac Institute, Inc. (Potomac) when the parties separated. At the time the parties entered into their agreement, Potomac did not provide any pension plans for their employees, although the company did plan to implement one eventually. In 1972, Potomac instituted an "Employees' Pension and Retirement Benefit Plan." The husband's rights in the non-contributory, "defined benefit plan," made retroactive to 1961 his first year with Potomac, were "vested from the beginning."

Arthur paid alimony conscientiously until his retirement in May, 1982. In a letter dated 1 June 1982, he notified Ida that his retirement terminated all alimony responsibilities. Ida initiated contempt proceedings to enforce payment. Arthur initially denied any further obligations to pay alimony, but subsequently filed a cross-petition to modify or reform the alimony provisions of the original decree. Following a hearing, the circuit court found that the husband's pensions

---

**1.** The original provision regarding alimony required the husband to pay the wife *one-third* of his annual *net* income after taxes in monthly installments. This was subsequently modified, by agreement of the parties, to *one-fourth* of the husband's annual *gross* income.

constituted "income" within the definition provided in the separation agreement and ordered him to continue paying alimony on a modified basis. In addition, it awarded counsel fees to the wife. Upon the husband's motion for reconsideration, the court revised its order; it struck the award of counsel fees but increased the modified alimony payments, basing the increase expressly on the court's inability to impose counsel fees on the husband. It is from this order that the parties appeal.

### III./A.

█ It has been said that "nothing stings more deeply than the loss of money."[2] In the case *sub judice,* the wife claims the right to share in the husband's retirement benefits on the basis that his pensions fall within the definition of "income" contained in their separation agreement. Not surprisingly, the husband disagrees. He contends that, when the parties entered into their agreement in 1971, retirement benefits were not generally considered to be salary or earned compensation but were regarded as a form of gratuity. Therefore, he says, the parties did not intend to include pensions in the "income" classification.

The trial court disagreed with both the husband's characterization of the law regarding retirement benefits and his interpretation of the agreement. After establishing that this case did not involve equitable distribution of pension benefits pursuant to the Marital Property Act, Md.Ann. Code, Cts. & Jud.Proc. Art. §§ 3–6A–01 to 3–6A–08 (1980); *Ohm v. Ohm,* 49 Md.App. 392, 431 A.2d 1371 (1981), the trial court found that the husband's pensions were indeed "income," as defined in the agreement. In addition, it held that his obligation to pay *some portion* of that income as alimony continued after his retirement from active employment. We agree.

---

2. Livy, Annales, XXX.

"Income," as defined in the agreement, constitutes "the total monthly income from wages, salaries, fees, commissions, or remuneration for work performed or services rendered, and does not include interest, dividends, gifts, return of capital, inheritance, stock dividends, or income from the sale of tangible assets...." The funds at issue in the case at bar are retirement benefits from two pension accounts received by the husband, $7,742.87 from ADL and $134,369.44 from Potomac. Upon his retirement from Potomac, the husband elected to receive a lump sum payment of $134,369.44, representing the present value of his life annuity. He then invested his total retirement receipts, $142,-112.31 (combined value of both pensions), in a private Individual Retirement Account (IRA).

The husband is correct that early authorities disagreed on whether payments, generally in the form of land bounties awarded by governments in return for military service, constituted compensation or "mere gratuities." *See* Annot. 94 A.L.R.3d 176, 190 n. 56 (1979). Today, however, the clear majority of jurisdictions characterize such benefits as compensation for past, rather than present or future services; in other words, as a part of an employee's salary rather than a donation. *Ohm, supra,* [49 Md.App.] at 396–403, 431 A.2d at 1373–75; *see generally,* 94 A.L.R.3d at 190–93.

Although the appellant correctly points out that *Ohm* discusses the power of the court to distribute pension proceeds equitably pursuant to the Marital Property Act, he is incorrect in his assumption that the court's rationale in support of its ultimate holding is inapplicable to the dispute presently before us. For cases holding that certain forms of retirement benefits are subject to equitable distribution or a community property award, *see* cases collected *Ohm, supra,* [49 Md.App.] at 396, 431 A.2d at 1374, 94 A.L.R.3d at 190–93. The courts' decisions are grounded in the rationale that such benefits constitute a mode of employee compensation, a "deferred compensation or wage substitute," earned during a given period of employment, rather than a mere gratuity. *Ohm, supra,* [49 Md.App.] at 397, 431 A.2d

at 1374. *But cf. Daigre v. Daigre,* 228 La. 682, 83 So.2d 900 (1955) wherein a pension was held to be mere gratuity which the company could discontinue at will and therefore, the husband's separation property, was not subject to division *in absence of any allegation or proof indicating that the pension was paid as remuneration for services rendered.* A review of these cases adopting this majority definition indicates that this was the general trend in 1971, the year the parties entered into their separation agreement. We therefore affirm the trial court's decision that the ADL and Potomac pensions, received by the husband, qualify as "wages, salaries ... or remuneration for work performed" by him and that, absent modification, his alimony obligation did not terminate upon his retirement from active employment.

## I.

The husband contends that, even if the retirement receipts are classified as "income," only a portion of those funds should be considered in determining the wife's alimony award. He asserts that, based on the formula provided in the plan, the amount actually contributed by Potomac on his behalf was $85,572, and the difference between that figure and the amount ultimately paid to him, $134,369.44, represented dividends or investment income accumulated by the account's trustee prior to pay-out. Citing the provision of the agreement expressly excluding "interest, dividends ..." from the definition of income, he contends that that portion of the fund should not be included in the court's calculations. The trial court rejected the husband's argument and found the entire balance to be "income" within the context of the agreement. Again, we agree.

The keystone of the husband's position is the theoretical divisibility of Potomac's retirement plan into individual employee accounts and the further separation, within each account, of company contribution and the interest accumulated on that contribution. In the case *sub judice,* the facts fail to support that keystone. Both parties cite the deposi-

tion of John J. Bould, an actuary employed by the firm administering Potomac's retirement plan, to substantiate their contentions. Notwithstanding the husband's favorable characterization of that deposition, we conclude that the record contains sufficient evidence to support the trial court's finding that the entire amount of the pension would be "income" as defined in the parties' separation agreement.

According to the actuary, Potomac's annual contribution for each eligible employee is calculated on the basis of that employee's anticipated benefits in proportion to the expected payroll of the entire group, *i.e.*, the active employees, taking into account the group's size, defaults, early retirements, etc. The costs of administering the program are also figured on a group, rather than individual basis. While it was theoretically possible to calculate the company's contributions on an individual basis in the defined benefit plan implemented by Potomac, no portion of the total retirement account was identifiable or earmarked for an individual employee; it was a group account rather than a collection of individual ones.

Based on the evidence before us, we cannot say that the trial court's refusal to sever and consequently insulate the interest or dividends earned on Potomac's actual contributions to the fund was clearly erroneous. Md.Rule 1086.

## II.

In the alternative, the husband argues that, if the court decided the pensions were "income," it should only consider that portion of the Potomac pension earned after the effective date of the agreement in 1971 in making its alimony award. In support of this theory, he points to the testimony of a representative from Potomac, who opined that, because the effective date of the pension plan was 1961, the husband had actually "earned" over one-half of his retirement benefits before he entered into the separation agreement in 1971. The actuary explained, however,

that in his experience it was common practice for an employer to include an employee's *entire period* of service, or make some allowance for that period of employment rendered prior to a retirement plan's implementation, in computing an employee's benefits. Once again, in considering the record before us, sufficient evidence exists to support the findings of the trial court that the entire amount of the pension was susceptible to the alimony calculations. Md. Rule 1086. Moreover, in view of our previous discussion of the compensatory nature of such plans, the husband's argument is unpersuasive.

### IV./B.

Next, both parties submit that the trial court abused its discretion in modifying the amount of the husband's alimony obligation. The wife contends that, if the husband's pensions are income, then she should be awarded the full amount due under the original order, twenty-five percent of that income or $35,528.07. In support of her position she states that by his own election the husband received in April, 1982, the entire amount due him under the pension plans in one payment of $142,112.31. This was approximately eleven months prior to filing his petition for modification. At that time, the only order in effect was the original one which required the husband to pay her twenty-five percent of his annual *gross* income. She argues that the court lacked the authority to give retroactive effect to the modification order, passed on 13 September 1983, changing past due installments of the husband's alimony payments.

The appellee-wife acknowledges, as she must, that the determination of the effective date of a modification order is within the discretion of the trial court, *Winkel v. Winkel*, 178 Md. 489, 15 A.2d 914 (1940); *Crandall v. Crandall*, 14 Md.App. 476, 287 A.2d 326 (1972). In making her argument, the wife has overlooked an extensive discussion of the power of the court to do precisely what she

contends it cannot do. We refer to the Court of Appeals' discussion in *Winkel, supra.* We find no abuse of discretion in the retroactivity portion of the court's order.

## V./C./D.

The only question remaining regarding the propriety of the trial court's order modifying the amount of alimony due from the husband is whether the court abused its discretion in making its determination.

In its original order of modification, based on evidence of the parties' current economic conditions, the court had reduced the husband's alimony obligation to $200 a month and ordered him to contribute $3,500 toward the wife's counsel fees. The husband filed a motion for reconsideration, citing *Bracone v. Bracone,* 16 Md.App. 288, 295 A.2d 798 (1972), protesting that the court's award of counsel fees was illegal, because the original case had been filed prior to 1 July 1980, the effective date of Md.Ann.Code, art. 16, § 3 (1981). Conceding it had no power to order counsel fees, the court revised its earlier opinion, striking the award of counsel fees but increasing the amount of alimony stating, "[b]ecause we cannot award counsel fees, ... we will increase this [alimony payment] to $250.00 per month."

■ On appeal, the wife submits that the court's original award of counsel fees was correct. In support of her position, she urges that this Court disregard our earlier holding in *Athanson v. Athanson,* 48 Md.App. 231, 426 A.2d 16 (1981), where we determined that the date of filing of the original bill of complaint determined when a "case" was filed. In the absence of some authority that would persuade us to reconsider our position in *Athanson,* we are not inclined to do so. The trial court correctly concluded that, because the original bill of complaint in this action was filed prior to the effective date of art. 16, § 3, its original award of counsel fees was *ultra vires.*

■ The court's order, expressly conditioning its award of $250 per month alimony on its inability to award counsel

fees, is invalid. While we agree with the court's conclusion that the parties' circumstances have changed since the original decree, *Hofmann v. Hofmann*, 50 Md.App. 240, 437 A.2d 247 (1981), the precepts used by the court in calculating the modification are incorrect. *Brodak v. Brodak*, 294 Md. 10, 447 A.2d 847 (1982). We therefore remand this case on the issue of modification for a redetermination of the amount of alimony due the wife, if any, with instructions that the court consider the factors analyzed in *Brodak, supra*, and proceed in accordance with this opinion.

██ In passing, we also note that the order is incorrect in that it appears to guarantee that, upon the wife's retirement and filing of a petition, the court will grant an automatic increase in the amount of alimony. If and when those circumstances come to fruition, we remind the parties that *any* modification of an existing order regarding the amount of alimony payments will be considered only upon a showing of a change in the parties' circumstances and pecuniary positions. *Brodak, supra*.

### E.

Finally, we address the question of whether the trial court adequately complied with the strictures of Md.Rule 18b [3] which requires the trial court to provide a brief statement explaining the grounds for its decision. In reviewing the trial court's memorandum opinions, we find the reasons stated therein to be sufficient.

JUDGMENT AFFIRMED IN PART AND REVERSED IN PART.

CASE REMANDED FOR FURTHER PROCEEDINGS NOT INCONSISTENT WITH THE DICTATES OF THIS OPINION.

COSTS TO BE DIVIDED EQUALLY BETWEEN THE PARTIES.

---

**3.** Presently Md.Rule 2–522(a).