784 A.2d 1086

Lori K. LANGSTON,

v.

Gary W. LANGSTON.

No. 18, Sept. Term, 2001.

Court of Appeals of Maryland.

Nov. 13, 2001.

Allen J. Kruger (Law Offices of Allen J. Kruger, P.A., Laurel,) on brief, for petitioner.

Cynthia E. Young, Annapolis, (Jo Benson Fogel of Jo Benson Fogel, P.A., Rockville,) all on brief, for respondent.

Argued before BELL, C.J., and ELDRIDGE, RAKER, WILNER, CATHELL, HARRELL and BATTAGLIA, JJ.

BATTAGLIA, Judge.

We granted a writ of certiorari to determine whether alimony payments may be modified retroactively, i.e. to a date prior to the filing of a pleading seeking such modification. The petitioner, Lori K. Langston, here challenges the decision of the Court of Special Appeals which held that respondent, Gary W. Langston, M.D., could obtain such retroactive modification of alimony payments.

## I. Facts

Gary W. Langston, M.D., respondent, and Lori K. Langston, petitioner, were married in Montgomery County on November 7, 1988. Lori did not work outside the home while married, but instead cared for the four children who were born during the course of their marriage.

The parties voluntarily separated on January 8, 1997, and entered into a Separation and Property Settlement Agreement

on June 10, 1997.[1] As a part of the Agreement, the respondent received sole custody of the couple's four children, while the petitioner received visitation. The parties agreed to pay child support jointly, commensurate with their abilities. The Agreement also established the following schedule of alimony payments from respondent to petitioner:

> ... the sum of $8,000.00 per month for the first year; the sum of $7,000.00 per month for the second year; the sum of $6,000.00 per month for the third year; the sum of $5,000.00 per month for the fourth and fifth years; and the sum of $4,000.00 per month [for] the sixth through tenth years. Alimony payment[s] shall account from and the first payment shall be due on April 1, 1997. The alimony payments shall continue only as long as the parties live separate and apart and shall terminate (except as to accrued arrears, if any) upon the first to occur of any one of the following events: the death of Wife, the remarriage of Wife, death of Husband, or the expiration of ten years.

Section V(a) of the Separation Agreement (June 10, 1997). The Agreement further provided:

> The alimony provisions of this paragraph are subject to the further order of the court and may be modified AS TO AMOUNT ONLY based proportionally on any increase or decrease in the Husbands [sic] gross income using calendar year 1996 as a base year. The alimony provisions with respect to terminating events or date may not be modified by any court of competent jurisdiction.

Section V(c) of the Separation Agreement (emphasis in original).

On August 12, 1997, the respondent filed in the Circuit Court for Montgomery County for an absolute divorce and requested that the Separation and Property Settlement Agreement be incorporated into the judgment of absolute

---

1. The parties amended the Separation Agreement on March 30, 1998. The amendments were executed prior to the hearing on the absolute divorce, held on that same day. The amendments do not affect the provisions of the Agreement at issue in this litigation.

divorce. The Circuit Court granted the absolute divorce and respondent's request for incorporation on March 30, 1998.

Within a few weeks, on May 4, 1998, respondent's counsel sent a letter to petitioner's counsel, stating that the respondent had experienced a substantial decrease in income during 1998. As a result of his diminished financial status, the respondent hoped to reach an agreement with petitioner on a reduction in alimony so as to avoid further expenses associated with an application to the court. The petitioner did not respond to the letter. Instead, she filed a Motion for Contempt against the respondent on June 16, 1998, asserting that he failed to make complete payments of the $8,000.00 per month alimony award. The respondent answered the motion by iterating that he had experienced a substantial loss in income in 1998 relative to the level of income reported as the base year (1996) in the parties' Separation Agreement. The respondent contemporaneously filed a Counter Motion for Modification of Alimony on September 18, 1998, wherein he requested, pursuant to Section 11–107(b) of the Family Law Article, that the court retroactively modify the amount of alimony payable to the petitioner under the Separation Agreement, from the time of his initial income diminution in 1998.

The trial court heard arguments on the parties' motions on January 29, 1999. At that time, the parties agreed that the respondent would make reduced payments of alimony beginning in February of 1999. What remained for the trial court's determination was the amount for which the respondent was accountable for the period of May 1998 to February 1999, in light of the respondent's assertion that his 1998 income ($152,-699.00) was a substantial reduction from his 1996 annual income ($751,219.00), the base income level under the terms of the Separation Agreement.[2]

---

2. Although the record contains documentation of the reduced alimony payments made by Gary Langston to Lori Langston from May of 1998 to September of 1998, the months within which the motion for modification was filed, and the trial court's order discusses the reduced payments to be made commencing in January of 1999; the record does not contain any information as to the amount of payments made under

The trial court ruled that Section V(c) of the Separation Agreement did not prohibit retroactive modification of the alimony payments irrespective of when the respondent filed his motion for modification with the court. The court stated that so long as the respondent "is able to establish by the evidence the date of decrease in his gross income, and it is the date of decrease that is issued for modification purposes and it is not affected by when he filed with the court, so I would accept the argument of [respondent] on that issue."[3] Therefore, on March 8, 1999,[4] the trial court entered an order stating that the respondent did not owe the petitioner any arrearage in alimony payments; the court further established that for January and February of 1999, the respondent should pay $1,697 per month in alimony, and commencing on March 1, 1999, he should pay $1,273 in alimony per month.

The petitioner filed a Notice for In Banc Review of the trial court's decision that she was not entitled to recoup arrearages in alimony for the period from May of 1998 through September of 1998, and that the respondent could retroactively modify his alimony payments to a period prior to his filing a formal request for such relief.

---

the Settlement Agreement for the period from October of 1998 to December of 1998.

**3.** The court also stated that the respondent could modify the amount of the alimony payments under the Separation Agreement either by reaching an agreement with the petitioner, or by seeking relief from the court. This ruling is relevant in that, for the period of May, 1998, through September, 1998, the respondent had made alimony payments in the amount of $2,160.00 per month, instead of the $8,000.00 per month as established in the Separation Agreement, and throughout the proceedings, he maintained that under Section V(c) of the Separation Agreement, he could unilaterally modify the amount of alimony based on changes in his financial circumstance. While the trial court did not address the issue of the respondent's unilateral modification of the alimony payments directly, it appears, by inference, that the court denied the respondent's ability to do so.

**4.** The trial court's order of March 8, 1999, was amended on March 23, 1999, on grounds not relevant to our consideration of the issue raised in the petition for certiorari.

A hearing was held on November 19, 1999 in front of a three judge panel.[5] The in banc court, in a 2–1 decision, reversed the trial judge's finding regarding the arrearage owed under the Separation Agreement. The majority stated:

> Maryland case law and Maryland statutes govern support and modification of support, and the law provides that parties to a divorce can enter into agreements as to support and modification of support, and in certain cases those agreements would supersede what the law otherwise provides.
>
> \* \* \*
>
> The parties contracted away any jurisdiction on the part of the Court to consider a modification of this support.
>
> \* \* \*
>
> If the parties had said in this agreement that a change in the support would be automatic, based on changes in his income, that would be one thing, but this agreement does not say that changes in support are automatic.
>
> It provides specifically that it is subject to further order of Court ... [it] is not an automatic modification ... Maryland law is that a Court cannot modify support prior to the filing of a petition to do so, and nothing in this agreement changes that.
>
> In other words, they didn't contract away that provision of the law by making it automatic based on certain things.
>
> So it is the opinion of the majority that the Court did not have the jurisdiction to modify the amount of support prior to the filing of a petition requesting the Court to do so.

The majority of the in banc panel found that the only effective date for modification of the alimony payments would be the date that the respondent actually filed his petition to reduce alimony (i.e. September of 1998), rather than the May, 1998, starting point. Therefore, on February 8, 2000, the in banc panel ordered that the respondent pay the petitioner

---

5. We will refer to the three judge panel as the in banc panel.

$29,200.00, representing alimony for the period of May, 1998, through September, 1998.

The respondent appealed this decision to the Court of Special Appeals, asking the court to consider whether a party could unilaterally modify his alimony payments without a court order based on the party's decline in income or, in the alternative, whether the court could order modification of the alimony payment to a date preceding the filing of a formal petition seeking such modification. *Langston v. Langston*, 136 Md.App. 203, 209, 764 A.2d 378, 381 (2000). The Court of Special Appeals set forth its holding as follows:

> ... we agree with the in banc panel that the Agreement does not permit Dr. Langston to reduce his alimony obligation without a court order. We also concur with the in banc panel that the terms of the Agreement do not permit modification of alimony retroactive to a date preceding the filing of a request. Therefore, we reject the trial judge's conclusion to the contrary. To be sure, the parties could have included such terms in their Agreement, but they failed to do so.
>
> We disagree, however, with the in banc panel's conclusion that Maryland statutory law bars modification of alimony retroactive to a date preceding the filing of a request. Although that view seems to be the general perception among lawyers and the bench, we believe that Maryland law makes such a determination a matter for the trial court in the exercise of its discretion.

*Id.* at 222, 764 A.2d at 388. Thus, the Court of Special Appeals affirmed in part the in banc panel's decision that the terms of the Separation Agreement did not permit retroactive modification and vacated in part the in banc panel's determination that retroactive modification was not permissible under Maryland statutory law, remanding the case to the trial court for further proceedings. *Id.*

Dissatisfied with the Court of Special Appeals's holding, the petitioner filed a Petition for a Writ of Certiorari, which we granted to consider whether alimony may be modified to a

date prior to the filing of a pleading seeking such relief. For the reasons set forth below, we hold that under Maryland law, although a party may not unilaterally modify an alimony award retroactively, absent a contractual provision permitting such, a trial court, in its discretion, may modify an alimony award retroactive to a date preceding the filing of a formal motion for modification when the party seeking modification files an appropriate motion with the court and sufficiently demonstrates the need for such modification. In the exercise of its discretion to allow modification, either retroactively or prospectively, the trial court must balance the needs of the party seeking modification with the interests of the other party.

## II. Discussion

### A. Procedure Following In Banc Review

 As a preliminary matter, we address whether the issuance of a writ of certiorari was appropriate in this case. The issue arises because normally a party who requests in banc review cannot appeal from the final decision of the in banc panel.

In the matter before us, petitioner initiated the appellate process by filing a notice for in banc review in the Circuit Court for Montgomery County to challenge the trial court's order allowing for retroactive modification of alimony. Pursuant to Maryland Rule 2–551, a party may file a notice seeking in banc review of any issue which was preserved by making an appropriate objection at trial. Once the notice has been filed, the Circuit Administrative Judge designates a three judge panel from the circuit, other than the original trial judge, to hear the issue. Article IV, Section 22 of the Maryland Constitution specifically allows for in banc review as follows:

> Where any Term is held, or trial conducted by less than the whole number of said Circuit Judges, upon the decision or determination of any point, or question, by the Court, it shall be competent to the party, against whom the ruling or decision is made, upon motion, to have the point, or question reserved for the consideration of the three Judges of the

Circuit, who shall constitute a court in banc for such purpose; and the motion for such reservation shall be entered of record, during the sitting, at which such decision may be made; and the several Circuit Courts shall regulate, by rules, the mode and manner of presenting such points, or questions to the Court in banc, and the decision of the said Court in banc shall be the effective decision in the premises, and conclusive, as against the party, at whose motion said points, or questions were reserved; but such decision in banc shall not preclude the right of Appeal, or writ of error to the adverse party, in those cases, civil or criminal, in which appeal, or writ of error to the Court of Appeals may be allowed by Law. The right of having questions reserved shall not, however, apply to trials of Appeals from judgments of the District Court, nor to criminal cases below the grade of felony, except when the punishment is confinement in the Penitentiary; and this Section shall be subject to such provisions as may hereafter be made by Law.

Maryland Code (1958, 1981 Repl.Vol.), Article IV, § 22 of the Maryland Constitution; *See generally,* John J. Connolly, *Maryland's Right of In Banc Review,* 51 MD. L.REV. 434 (1992).

A decision rendered by an in banc panel "is conclusive, final, and non-appealable by the party who sought the in banc review, and as to that party a reservation of points or questions for consideration by a court in banc is a substitute for an appeal to the Court of Special Appeals." *Montgomery County v. McNeece,* 311 Md. 194, 198, 533 A.2d 671, 673 (1987); Md. Rule 2–551(h). Maryland Rule 2–551(h) also provides that, "[t]he decision of the panel does not preclude an appeal to the Court of Special Appeals by an opposing party who is otherwise entitled to appeal." Thus, respondent was not precluded from filing his appeal with the Court of Special Appeals. *See Estep v. Estep,* 285 Md. 416, 420–21, 404 A.2d 1040, 1042–43 (1979). The right of the adverse party to appeal the decision of the in banc panel to the Court of Appeals is specifically recognized in Article IV, Section 22 of the Maryland Constitution. However, the Maryland Constitution also states that the decision of the in banc panel "shall be the effective decision in

the premises, and conclusive" with regard to the party who originally sought review by the in banc panel. Md. Const., Art. IV, § 22.

The question remains as to whether petitioner could file a petition for a writ of certiorari in this Court following respondent's successful appeal to the Court of Special Appeals. Although Rule 2–551(h) limits who may appeal the in banc panel's decision to the Court of Special Appeals, it does not place any restrictions on seeking additional review by the Court of Special Appeals to this Court. Section 12–201 of the Courts and Judicial Proceedings Article specifically states that *any party* may file a petition for certiorari in the Court of Appeals for review of a decision rendered by the Court of Special Appeals. Md.Code (1974, 1998 Repl.Vol.), § 12–201 of the Courts and Judicial Proceedings Article (emphasis added). In the present case, petitioner would have been precluded effectively from exercising her opportunity to seek review of a partially adverse ruling were we to have dismissed her petition as unauthorized. Neither the Maryland Constitution, Maryland Rule 2–551, nor Section 12–201 of the Courts and Judicial Proceedings Article mandates such preclusion. Previously this Court has decided the merits of a case traveling an identical route from a final decision of an in banc panel. *See In Re: Adoption / Guardianship No. A91–71A,* 334 Md. 538, 551–54, 640 A.2d 1085, 1091–93 (1994)(adoptive parents filed Notice for In Banc Review; natural father appealed to the Court of Special Appeals; adoptive parents along with natural mother and baby filed joint petition for a writ of certiorari granted by this Court).

## B. Retroactive Modification of Alimony Awards

### 1. Maryland Statutory Provisions

The statutory framework for alimony is silent concerning retroactive modification, stating only:

(a) *Where available.*—The court may award alimony:

(1) on a bill of complaint for alimony; or

(2) as part of a decree that grants:

(i) an annulment;

(ii) a limited divorce; or

(iii) an absolute divorce.

(b) *Award to either party.*—The court may award alimony to either party.

(c) *Effect of agreement.*—If a final disposition as to alimony has been made in an agreement between the parties, the court is bound by that agreement as the agreement relates to alimony.

Md.Code (1984, 1999 Repl.Vol.), § 11–101 of the Family Law Article. Subsection (c) mandates that the court is bound by the terms of a separation agreement entered into by the parties, which allows parties to customize their separation agreements to suit best their personal needs and circumstances.

In addition to the basic framework for alimony awards contained in Section 11–101, the Maryland Code sets forth two other statutory provisions regarding modification of alimony awards. Section 11–107(b) of the Family Law Article states that, "[s]ubject to § 8–103 of this article and on the petition of either party, the court may modify the amount of alimony awarded as circumstances and justice require." Section 8–103(c) limits such modifications as follows:

The court may modify any provision of a deed, agreement, or settlement with respect to alimony or spousal support executed on or after April 13, 1976, regardless of how the provision is stated, unless there is:

(1) an express waiver of alimony or spousal support; or

(2) *a provision that specifically states that the provisions with respect to alimony or spousal support are not subject to any court modification.*

Md.Code (1984, 1999 Repl.Vol.), § 8–103(c) of the Family Law Article (emphasis added). Section 8–103 provides an additional restriction upon the general rule that allows a court to modify "any provision of a deed, agreement, or settlement" which has been "incorporated, whether or not merged, into a

divorce decree...." Md.Code (1984, 1999 Repl.Vol.), § 8–105 of the Family Law Article.

The legislative roots of Sections 11–107(b) and 8–103(c) run deep within Maryland's statutory history. *See* 1980 Md. Laws ch. 575, § 5; 1931 Md. Laws ch. 220 § 1. Throughout this history of legislation concerning alimony awards, the General Assembly never delineated explicitly a provision governing retroactive modification of alimony awards. The legislature, however, repeatedly has vested the courts with broad discretionary power when dealing with alimony awards. For example, Article 16, Section 14 of the Maryland Code (1888) stated:

> The courts of equity of this State, shall and may hear and determine all causes for alimony, in as full and ample manner as such causes could be heard and determined by the laws of England in the ecclesiastical courts there.

Md.Code, Art. 16, § 14 (1888)(citing *Keerl v. Keerl,* 34 Md. 21 (1871); *J.G. v. H.G.,* 33 Md. 401 (1870); *Schindel v. Schindel,* 12 Md. 294 (1858); *Feigley v. Feigley,* 7 Md. 537 (1855); *Jamison v. Jamison,* 4 Md. Ch. 289 (1847); *Wiles v. Wiles,* 3 Md. 1 (1852); *Wright v. Wright's Lessee,* 2 Md. 429 (1852); *Dunnock v. Dunnock,* 3 Md. Ch. 140 (1852); *Tayman v. Tayman,* 2 Md. Ch. 393 (1851); *Coles v. Coles,* 2 Md. Ch. 341 (1851); *Daiger v. Daiger,* 2 Md. Ch. 335 (1850); *Ricketts v. Ricketts,* 4 Gill 105 (1846); *Helms v. Franciscus,* 2 Bland 544 (1830); *Hewitt v. Hewitt,* 1 Bland 101 (1826); *Crane v. Meginnis,* 1 G. & J. 463 (1829); *Wallingsford v. Wallingsford,* 6 H. & J. 485 (1825); *Galwith v. Galwith,* 4 H. & McH. 477 (1689)); *see Thomas v. Thomas,* 294 Md. 605, 618–19, 451 A.2d 1215, 1222 (1982).

## 2. The Separation Agreement Between the Parties

The point of departure for this analysis of alimony is the parties' Separation Agreement, because "the court is bound by that agreement as the agreement relates to alimony." Md. Code (1984, 1999 Repl.Vol.), § 11–101(c) of the Family Law Article. If the Langstons' Separation Agreement "specifically" precludes "any court modification," then the court is bound

by those terms. Md.Code (1984, 1999 Repl.Vol.), § 8–103(c) of the Family Law Article.

The Langstons' Separation Agreement explicitly states that, "[t]he alimony provisions of this paragraph are *subject to the further order of the court*, and *may be modified* AS TO AMOUNT ONLY based proportionally on any increase or decrease in the Husbands [sic] gross income...." Section V(c) of the Separation Agreement (italicized emphasis added; other emphasis in original).

The Separation Agreement establishing the amount and schedule of respondent's alimony payments to petitioner was incorporated, but not merged, into the trial court's order granting the parties an absolute divorce. The terms of a separation agreement which has been incorporated, but not merged, into a divorce decree are enforceable either through contempt proceedings or as an independent contract. *See* Md.Code, § 8–105(a) of the Family Law Article.[6] Because respondent urges us to consider the Separation Agreement as an independent contract, he argues that its terms should be strictly construed as not prohibiting retroactive modification of his alimony obligation to petitioner.[7] As such, we will apply

---

6. Section 8–105 of the Family Law Article provides:
 (a) *Enforcement by power of contempt.*—(1) The court may enforce by power of contempt the provisions of a deed, agreement, or settlement that are merged into a divorce decree.
 (2) The court may enforce by power of contempt or as an independent contract not superseded by the divorce decree the provisions of a deed, agreement, or settlement that contain language that the deed, agreement, or settlement is incorporated but not merged into a divorce decree.
 (b) *Modification.*—The court may modify any provision of a deed, agreement, or settlement that is:
 (1) incorporated, whether or not merged, into a divorce decree; and
 (2) subject to modification under § 8–103 of this subtitle.

7. In the lower courts, Gary Langston advanced the argument that the Separation Agreement was modifiable between the parties, and that under the language of the agreement, the parties were not required to file a motion with the court for modification. On this issue, the Court of Special Appeals held that Gary Langston could not unilaterally modify the amount of his alimony payments, because the terms of the

the basic rules and principles of contract interpretation to the Langstons' Separation Agreement. *See Goldberg v. Goldberg,* 290 Md. 204, 212, 428 A.2d 469, 474 (1981).

The in banc panel and the Court of Special Appeals disagreed with respondent and found that "the language of the Agreement does not provide for modification of alimony retroactive to the date when [Dr. Langston] first sustained a decrease in income." *Langston,* 136 Md.App. at 227, 764 A.2d at 391. In reaching this conclusion, the Court of Special Appeals noted that the Settlement Agreement was in fact silent on the issue of retroactive modification, rather than prohibitive in its language. *See id.*

The interpretation by the lower courts of the Settlement Agreement is a question of law, which is subject to *de novo* review. *See Auction & Estate Representatives, Inc. v. Ashton,* 354 Md. 333, 341, 731 A.2d 441, 445 (1999); *JBG/Twinbrook Metro Ltd. v. Wheeler,* 346 Md. 601, 625, 697 A.2d 898, 911 (1997). Contract interpretation, like statutory interpretation, begins with the principle of the plain meaning of the contractual terms. *See Fister v. Allstate Life Ins. Co.,* 366 Md. 201, 209, 783 A.2d 194, 199 (2001). The terms of a contract must be given their ordinary and usual meaning as utilized within the context of the contract. *See Cheney v. Bell Nat'l Life Ins. Co.,* 315 Md. 761, 766, 556 A.2d 1135, 1138 (1989); *Kasten Construction Co. v. Rod Enters., Inc.,* 268 Md. 318, 329, 301 A.2d 12, 18 (1973).

Maryland follows the objective law of contract interpretation. *See Taylor v. NationsBank, N.A.,* 365 Md. 166, 178, 776 A.2d 645, 653 (2001). The objective law of contract interpretation holds that a written contract will be considered ambiguous when it is susceptible to more than one interpretation when examined by a reasonably prudent person, *see*

---

agreement were "not ambiguous with respect to the issue of whether [Gary Langston] had the right to reduce his alimony obligation on his own, without first obtaining a court order." *Langston,* 136 Md.App. at 227, 764 A.2d at 390–91. Respondent has not raised this issue and argument before us, and therefore, we need not consider it.

*Calomiris v. Woods,* 353 Md. 425, 436, 727 A.2d 358, 363 (1999); however, "[i]f a written contract is susceptible of a clear, unambiguous and definite understanding ... its construction is for the court to determine." *Wells v. Chevy Chase Bank, F.S.B.,* 363 Md. 232, 251, 768 A.2d 620, 630 (2001)(quoting *Rothman v. Silver,* 245 Md. 292, 296, 226 A.2d 308, 310 (1967))(internal quotations omitted). Under the objective law of contract interpretation, the court will give force and effect to the words of the contract without regard to what the parties to the contract thought it meant or what they intended for it to mean. *See Auction & Estate Reps., Inc. v. Ashton,* 354 Md. at 340–41, 731 A.2d at 445(quoting *Calomiris,* 353 Md. at 436, 727 A.2d at 363).

It is evident from the plain meaning of the words of Section V(c) of the Separation Agreement that the parties anticipated that there may come a point in time where the alimony might be increased or decreased based upon changes in respondent's income. The Agreement specifically states that "[t]he alimony provisions of this paragraph are subject to the further order of the court, and may be modified AS TO AMOUNT ONLY. . . ." Section V(c) of the Separation Agreement (emphasis in original). With regard to retroactivity of any modification, the Agreement does not expressly permit retroactive modification, nor does it expressly prohibit either party from seeking retroactive modification through the statutory provisions of Section 11–107(b). The terms of the Settlement Agreement are not dispositive of the issue of whether a trial court has discretion retroactively to modify alimony payments. *Langston,* 136 Md.App. at 228, 764 A.2d at 391. We now turn to the statutory provisions.

### 3. Application of the Statutory Framework

 Whether retroactive modification is permissible within the statutory framework is determined by interpretation of Sections 8–103(c) and 11–107(b) of the Family Law Article. The cardinal rule of statutory interpretation is the ascertainment of legislative intent. *See Condon v. State,* 332 Md. 481, 491, 632 A.2d 753, 757 (1993). Our investigation of

legislative intent begins with the words of the statute. *See Torboli v. Torboli,* 365 Md. 52, 63, 775 A.2d 1207, 1214 (2001)(quoting *Oaks v. Connors,* 339 Md. 24, 35, 660 A.2d 423, 429 (1995)). In examining the language of the statute, we ascribe to those words their ordinary and commonly understood meaning. *See Graves v. State,* 364 Md. 329, 346, 772 A.2d 1225, 1235 (2001). Where the plain meaning of a statute is unambiguous, it "must be construed without forced interpretations designed to limit its application." *In re: Adoption/Guardianship No. A91–71A,* 334 Md. at 557, 640 A.2d at 1095. Thus, if the legislative intent is apparent from the text of the statute itself, we end our inquiry and allow the plain meaning of the statute to govern our interpretation. *See Martin v. Beverage Capital Corp.,* 353 Md. 388, 399, 726 A.2d 728, 733 (1999).

The express statutory allowance for modification of alimony awards, as set forth in Section 11–107(b) of the Family Law Article, does not use any language which prohibits an order of retroactive modification, or conversely, authorizes only prospective modification. Under Section 11–107(b), the only words of limitation and guidance to the trial court in exercising its discretion to modify an alimony award is the phrase "as circumstances and justice require." Md.Code, § 11–107(b) of the Family Law Article.[8] The predecessor to Section 11–107(b) contained similar language, which also encompassed the language of Section 8–103(c):

> ... Furthermore, any provision in the deed or agreement in respect to alimony, support and maintenance of the husband or wife is subject to modification by the court to the extent the court deems just and proper regardless of the manner in which the provisions with respect to the alimony, support and maintenance are expressed or stated unless there is an express waiver of alimony, support and maintenance by the

---

**8.** As hereinbefore discussed, Section 8–103(c)(2) prohibits modification by the court of alimony provisions in settlement agreements which contain specific language stating that they are not subject to court modification.

husband or wife or unless the provisions of the deed, agreement, or settlement specifically state that the provisions with respect to the alimony, support and maintenance of the husband or wife are not subject to any court modification.

Md.Code, Art. 16, § 28 (1957, 1981 Repl.Vol.). *See also,* Md.Code, Art. 16, § 37 (1951); Md.Code, Art. 16, § 42 (1939).

We have taken the position that alimony awards may be modified from time to time depending on the needs and financial circumstances of the parties. *See Blaine v. Blaine,* 336 Md. 49, 70, 646 A.2d 413, 423 (1994); *Goldberg v. Goldberg,* 290 Md. at 209, 428 A.2d at 473; *Stevens v. Stevens,* 233 Md. 279, 282, 196 A.2d 447, 449 (1964); *Sugarman v. Sugarman,* 197 Md. 182, 188, 78 A.2d 456, 459 (1951); *Langrall v. Langrall,* 145 Md. 340, 344–45, 125 A. 695, 697 (1924). In *Winkel v. Winkel,* 178 Md. 489, 15 A.2d 914 (1940), we explained that,

[t]he doctrine is founded in an equality of right and obligation, and its enforcement is indifferent to whether the change is in the relief of one spouse, so long as the rights of the other are not denied. It is patent that of its nature alimony is in amount subject to variations from time to time as the circumstances, needs, and pecuniary condition of the parties change.

*Id.* at 499, 15 A.2d at 918–19. Thus, we noted that, "the time when such modification may become effective was in the discretion of the chancellor." *Id.* at 496, 15 A.2d at 917.

▮ In its discourse with counsel for Gary Langston, the in banc panel emphasized that the parties' Separation Agreement did not contain language specifically permitting retroactive modification of the alimony award:

Court: Where is the language which says it is retroactive prior to the date of filing of the petition to modify the alimony? Where does it say that?

Counsel for respondent: It doesn't say that, Your Honor.

Court: I know.

Counsel for respondent: But—but the plain meaning of the words—you are saying that the parties had to have intended that there be an affirmative requirement to do that, and—and it doesn't say it, so there is no require-ment that either party come to Court. It says—it real-ly—

Court: But it is just like any other case, if they want to modify it—

Counsel for respondent: Right.

Court:—by consent they can, but in the event one party has to come to Court, which is what happened in this case, how do you make that leap that it is retroactive prior to the filing of the petition?

Counsel for respondent: Because there is a provision, there is a built in reduction that says it may be modified, and then it tells everybody—it tells the parties how you do it.

Court: What the formula is.

\* \* \*

Counsel for respondent: So to require him to come to Court, to file this, to do all those things when it is not in the agreement that he must do it, and then say, "Well, you can't have a reduction till you do this, even though your agreement says it—it—it may be modified."

Court: It may be, but it doesn't—

Counsel for respondent: Right.

Court:—say anything about if he has to come to Court that it is retroactive prior to the date of filing.

\* \* \*

Court: But in the event that [the parties] do have to come to Court, ... which is this case, I fail to see where it says [in the agreement that it's] retroactive prior to the date of filing of the petition.

Counsel for respondent: Why does it have to say that? Your—

Court: Because that is the law.

Counsel for respondent:—you are—it isn't the law, Your Honor, as to the interpretation of the contract, and the fact that this contract doesn't have those, you are putting—you are rewriting the contract.

Court: No, I am not. I am trying to read it as it exists.

Counsel for respondent: Well, if you read it as it exists, there is no word anywhere that says you go back the date—that you cannot—you cannot have a reduction pursuant to the formula you say you had. I mean, the formula says—

Court: It should have ... been written that way.

Contrary to the reasoning of the in banc panel, Sections 11–107(b) and 8–103(c) do not require the parties to a separation agreement to include in the agreement specific language permitting retroactive modification. The statutory avenue of 11–107(b) permitting modification in the court's discretion "as circumstances and justice require" remains open unless the parties specifically state that the alimony award provisions of their separation agreement are not modifiable by the court. *See* Md.Code, § 8–103(c) of the Family Law Article.

Petitioner argues that modification of alimony awards must be limited to prospective application because such a limitation is "implied, intended and necessary." In support of this position, she analogizes to case law developed from interpretations of the statutory provision concerning modification of child support awards. *See Reese v. Huebschman,* 50 Md.App. 709, 440 A.2d 1109 (1982). In *Reese,* the Court of Special Appeals dealt with the validity of a chancellor's order that a change in circumstances must be shown in order to increase the amount of child support owed under the parties' separation agreement. *Id.* at 710, 440 A.2d at 1110–11. The appellant, Ms. Reese, relied upon Article 16, Section 28 of the Maryland Code (1957, 1981 Repl.Vol.), which at that time concerned modification of both child support and alimony payments.[9] Relying upon its decision in *Lott v. Lott,* 17

---

**9.** Article 16, Section 28 of the Maryland Code (1957, 1981 Repl.Vol.), which concerned both alimony and child support, was recodified in the

Md.App. 440, 302 A.2d 666 (1973), the Court of Special Appeals held that "the rule for modifying child support was the same as that for modifying alimony." *Reese*, 50 Md.App. at 711, 440 A.2d at 1111. The court went on to explain that modifications of alimony and child support awards should be based on a showing of a material change in circumstances for the parties. *Id.* at 711–12, 440 A.2d at 1111. In so doing, the court stated that,

> Even after the chancellor determines that a change in the parties' circumstances has occurred, res judicata also prevents him from making retroactive any modification of the amount of the support payments prior to the date of the filing of the petition to modify the support.

*Id.* at 713, 440 A.2d at 1112.

We caution, however, that the issue decided in *Reese* was only that the chancellor had not erred in concluding that the parties must show a change in their circumstances in order to sustain appellant's request for prospective modification of a child support award. *See id.* at 710, 440 A.2d at 1110. While the Court of Special Appeals stated that the showing required for modification was the same for both alimony and child support awards, the court's above-quoted statement concerning retroactivity was merely dicta; the issue of retroactive modification of alimony awards simply was not before the court in *Reese*.

Subsequent to the opinion in *Reese*, the Court of Special Appeals, in fact, found no abuse of judicial discretion when a trial court ordered retroactive modification of an alimony award involving past due alimony payments. *See Levin v. Levin*, 60 Md.App. 325, 336, 482 A.2d 935, 940 (1984). In *Levin*, the Court of Special Appeals considered, *inter alia*, "[w]hether the court abused its discretion in modifying an

---

Family Law Article of the Maryland Code through Chapter 296 of the 1984 Maryland Laws. As we previously stated, the only current limitation on modification of alimony awards is that it be done "as circumstances and justice require." Md.Code, § 11–107(b) of the Family Law Article.

alimony obligation retroactive to a time period prior to the ex-husband's petition to modify the alimony obligation...." 60 Md.App. at 329, 482 A.2d at 937.

The factual situation confronting the Court of Special Appeals in *Levin* involved a change in Arthur Levin's income from salaried remuneration to pension payments because of his retirement. *Id.* at 330, 482 A.2d at 937. The circuit court determined that Arthur's pension payments qualified as "income" under the definition of that term as provided in the parties' separation agreement and that Arthur must continue to pay a modified amount of alimony to his former wife, Ida. *Id.* at 330–31, 482 A.2d at 937. In so doing, the circuit court permitted a retroactive modification of the amount of the alimony payments, starting eleven months prior to Arthur's filing of a petition for modification with the court, in light of the reduced level of income generated by his pension payments. *Id.* at 335, 482 A.2d at 940.

On appeal, the Court of Special Appeals found that the circuit court had not abused its discretion by ordering retroactive modification of the alimony award. *See id.* at 335–6, 482 A.2d at 940 (citing *Winkel v. Winkel,* 178 Md. 489, 15 A.2d 914 (1940); *Crandall v. Crandall,* 14 Md.App. 476, 287 A.2d 326 (1972)). The factual scenario involved in the *Levin* case parallels the circumstances of the case now before us.[10]

Our interpretation that retroactive modification of alimony awards is permissible under the Maryland statutory scheme in the absence of prohibitive language is further supported through comparing and contrasting the alimony provisions with Section 12–104 of the Family Law Article, governing

---

**10.** We note, that in interpreting Maryland law concerning alimony awards, the District of Columbia Court of Appeals has found that Maryland law permits retroactive modification of alimony awards. *See Gamble v. Gamble,* 258 A.2d 261, 262 (D.C.1969)(interpreting Maryland law as allowing for retroactive modification or cancellation of alimony awards); *Fuller v. Fuller,* 190 A.2d 252, 253 (D.C.1963)(stating that Maryland courts have held that alimony decrees are subject to retroactive modification); *Brown v. Brown,* 75 A.2d 140, 141–43 (D.C. 1950)(the parties conceded and the court concluded that under Maryland law, alimony awards are subject to retroactive modification).

modification of child support awards. The General Assembly amended the child support modification provision in 1988 to include language which specifically prohibits retroactive modification of child support awards:

(a) *Prerequisites.*—The court may modify a child support award subsequent to the filing of a motion for modification and upon a showing of a material change of circumstance.

(b) *Retroactivity of modification.*—The court may not retroactively modify a child support award prior to the date of the filing of the motion for modification.

Md.Code (1984, 1999 Repl.Vol.), § 12–104 of the Family Law Article.[11]

---

**11.** It appears that the General Assembly imposed limitations on the modification of child support awards in order to comply with the requirements of the Aid to Families with Dependent Children (AFDC) Act, 42 U.S.C. § 601 et seq. (1986). *See* Senate Judicial Proceedings Committee, Floor Report of Senate Bill 691 (1988)(stating "Maryland was notified on December 8, 1987 that the Director of the Federal Office of Child Support Enforcement intended to disapprove Maryland's [State Plan for Child Support] because of failure to enact legislation prohibiting retroactive modification of child support orders."). In her testimony before the Senate Judicial Proceedings Committee in favor of enacting Senate Bill 691, Senator Ida G. Ruben explained the public policy concerns and need for change to Maryland's provisions governing child support modification:

As it stands now, a person owing back-child support payments usually has to go back to court and promises to be more timely in the future. Then the judge usually wipes out the previous debt and allows the payor to start anew with chid support payments. The result is that thousands of dollars owed to children and their families are lost forever. S.B. 691 would end that practice by not allowing the court to retroactively modify a standing decree for child support. Children and their families would be able to get back payments they are owed.

The federal government has recognized this as a national problem and has passed legislation requiring states to conform to national standards in child support payments. S.B. 691 would bring the State of Maryland into conformity with federal law. Presently, Maryland is the *only* state not yet in compliance with federal standards. We are in danger of losing all of our child support funding and federal AFDC payments if we do not come into compliance this session. . . .

*Child Support—Retroactive Modification: Hearings on S.B. 691 Before the Senate Judicial Proceedings Committee,* March 10, 1988 (testimony of Sen. Ida G. Ruben).

The absence of similar language placing limitations or restrictions on the ability to modify alimony awards in Section 11–107(b) provides substantial support for the proposition that the General Assembly did not intend to bar retroactive modification of alimony awards. As demonstrated through the plain terms of Section 12–104(b), when the legislature intends to impose conditions upon modification of support awards, it expresses its intention clearly and concisely within the chosen statutory language. While we recognize that Section 12–104(b) was enacted after Section 11–107(b), it is significant that the General Assembly did not revisit Section 11–107(b) and impose the prohibitions on retroactive modification of alimony at the same time it imposed the limitations on retroactive modification of child support.

 Where the General Assembly has enacted an unambiguous statute, we cannot, and will not, divine a legislative intention contrary to the plain language of a statute or judicially insert language to impose exceptions, limitations or restrictions not set forth by the legislature. *See Mid–Atlantic Power Supply Assn. v. Pub. Serv. Comm'n,* 361 Md. 196, 204,

---

The federal legislation with which the General Assembly sought to comply provides in relevant part as follows:

(a) ... each State must have in effect laws requiring the use of the following procedures ... to increase the effectiveness of the program which the State administers under this part [42 U.S.C. § 651 et seq.]:

\* \* \*

(9) Procedures which require that any payment or installment of support under any child support order, whether ordered through the State judicial system or through the expedited processes required by paragraph (2), is (on and after the date it is due)—

(A) a judgment by operation of law, with the full force, effect, and attributes of a judgment of the State, including the ability to be enforced,

(B) entitled as a judgment to full faith and credit in such State and in any other State, and

(C) not subject to retroactive modification by such State or by any other State; except that such procedures may permit modification with respect to any period during which there is pending a petition for modification, but only from the date that notice of such petition has been given, either directly or through the appropriate agent, to the obligee or (where the obligee is the petitioner) to the obligor.

42 U.S.C. § 666 (1986).

760 A.2d 1087, 1091 (2000)("we neither add nor delete words to a clear and unambiguous statute to give it a meaning not reflected by the words the Legislature used or engage in a forced or subtle interpretation in an attempt to extend or limit the statute's meaning"); *Coleman v. State,* 281 Md. 538, 546, 380 A.2d 49, 54 (1977).

■ Accordingly, we hold that Maryland Code, Section 11–107(b) of the Family Law Article, permits a trial court, in the exercise of its discretion, to order modification of alimony payments retroactive to a date prior to the formal filing of a request for modification with the court "as circumstances and justice require" in a particular case.

In the case *sub judice* the record indicates that the trial court did not exercise its discretion in retroactively modifying the alimony payments. As the Court of Special Appeals noted in its opinion, the trial court never reached a balancing of the parties' respective competing interests, "because [the trial court] erroneously determined that the parties agreed upon modification retroactive to the time when [Dr. Langston's] income declined." *Langston,* 136 Md.App. at 234, 764 A.2d at 394.

■ The essential phrase of Section 11–107(b) which authorizes modification of alimony payments is "as circumstances and justice require." A party requesting modification of an alimony award must demonstrate through evidence presented to the trial court that the facts and circumstances of the case justify the court exercising its discretion to grant the requested modification. In this case, however, the trial court failed to receive evidence and make findings of fact concerning the relative financial needs and abilities of the parties in reaching its decision.

The trial court must balance the interests and fairness to both the payor and the spouse receiving alimony, in exercising its discretion to modify the alimony award. The necessity for this type of balancing becomes even more pronounced in the context of a payor's request for retroactive modification involving a decrease in the amount of alimony payments, where the

spouse receiving the alimony, who has already incurred expenditures based on an expectation of receiving a certain amount of money, may be placed at a distinct disadvantage due to the unexpected financial hardship of the payor spouse. Similarly, the spouse receiving alimony may request an increase in alimony payments based on the improved financial condition of the payor spouse or diminished capacity on his or her own part, such that the circumstances attendant to the request may justify a retroactive increase in the amount of the alimony payments. Thus, the trial court is charged with the delicate responsibility of weighing the respective needs of the parties based on the evidence they present, before exercising its discretion to enter an order for retroactive modification of alimony payments.

■■■ In reaching our decision today, we want to make it absolutely clear that, absent express language in a separation agreement permitting unilateral modification of alimony, a party seeking modification of alimony payments under Section 11–107(b) must make a formal request for modification to the court.[12] Once the trial court has received such a request, Section 11–107(b) of the Family Law Article does not restrict the court in the exercise of its discretion, upon a proper demonstration of need for such modification, from ordering that the alimony payments be modified.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED.*

*COSTS TO BE PAID BY PETITIONER.*

---

12. A party who attempts to unilaterally modify the alimony award payments based on his or her own interpretation of the parties' separation agreement runs the risk of liability for arrearages and other expenses in the discretion of the trial court, should the modification be challenged as being contrary to the terms of the agreement.