998 A.2d 921

William J. MEYER, III, et al.

v.

William J. MEYER, Jr.

No. 00375, Sept. Term, 2009.

Court of Special Appeals of Maryland.

July 8, 2010.

Peter T. McDowell of Towson, MD, for appellant.

Alan H. Silverberg (Summerfield, Willen Silverberg & Linsky LLC, on the brief) Baltimore, MD, for appellee.

Panel: WOODWARD, KEHOE, JAMES P. SALMON (Retired, Specially Assigned), JJ.

KEHOE, J.

This appeal arises out of a dispute between William J. Meyer, Jr., appellee ("Father"), and two of the appellants, his son, William J. Meyer, III ("Son"), and his daughter, Rachael[1] Meyer ("Daughter"), regarding the equitable division of the proceeds of sale of real property (the "Property") owned jointly by them. A second issue relates to the enforceability of a provision in a marital separation agreement between Father and the third appellant, Kimberly O'Neil ("Mother"),[2] that would require Father to pay a portion of the proceeds of the sale of the Property to Mother.

After a court trial, the Circuit Court for Carroll County determined that Father was entitled to contribution from Son and Daughter for a portion of his mortgage, tax, and insurance payments for the Property and ordered the distributive shares of the three to be adjusted accordingly. The circuit court also concluded that the provision in the marital separation agreement regarding Mother's right to payment was unenforceable. The court entered judgment to that effect. Upon a timely appeal, appellants raise two issues, which we have reworded:[3]

> I. Did the circuit court abuse its discretion in ordering Son and Daughter to contribute a portion of their shares of the proceeds of sale to Father to reimburse him for mortgage

---

1. Ms. Meyer's first name is sometimes spelled "Rachel" in the record.

2. In the record, O'Neil is sometimes spelled "O'Neal."

3. Appellants phrase the issues as:
 I. Whether the lower court erred in ordering joint owners of real property to pay contribution for two-thirds of the mortgage payments and repairs if the conveyance of the property to appellants was a gift. II. Whether the trial court erred in denying appellant Kimberly O'Neal $10,000.00 pursuant to a settlement agreement.

payments, taxes and insurance incurred in connection with their jointly owned property?

II. Did the circuit court err in determining that the controverted provision of the marital separation agreement was unenforceable?

We answer each question in the affirmative. We will reverse the judgment of the circuit court as to the first issue and vacate the court's judgment as to the second and remand the case for further proceedings.

### FACTUAL AND PROCEDURAL BACKGROUND

Father and Mother were married on March 2, 1984. Two children, Son, born February 12, 1985, and Daughter, born April 7, 1988, were born of the marriage. In 1987, Father and Mother purchased the Property, a residence located at 412 Leppo Road, Westminster, Maryland, as tenants by the entireties for $113,000.00. The Property was the marital home.

On May 2, 1989, Father and Mother mutually and voluntarily separated. On November 16, 1990, Father and Mother executed a voluntary separation agreement (the "Separation Agreement"). Section 8 of the Separation Agreement provided in pertinent part:

It is the intention of the parties, upon execution of this Agreement, to transfer all of their right title and interest in the marital home to Husband, who shall assume all of the obligations of the mortgage....

\* \* \*

In consideration for relinquishing all of her right, title and interest in the marital home to Husband, Wife shall receive, upon the sale of said home, one-half of the net proceeds of said home ... up to a maximum of Ten Thousand Dollars ($10,000.00).

The Separation Agreement also provided that, pending transfer of Mother's interest to him, Father was to be "solely responsible for the payment of the mortgages, and all other expenses associated with the ownership of the marital home...." At the time the Separation Agreement was signed,

the Property was subject to a mortgage in the approximate amount of $103,000.

On November 4, 1991, Father and Mother conveyed the Property to Father, Son and Daughter as joint tenants with right of survivorship. Son and Daughter were, respectively, six and three years old at the time of the conveyance and resided with Father in the Property. The deed provided in pertinent part:

This Deed, made this 4th day of November in the year one thousand nine hundred and ninety-one by and between [Father] and [Mother], husband and wife, parties of the first part, and [Father], [Son] and [Daughter], parties of the second part.

Witnesseth, There being no consideration for the transfer of the hereinafter described property, the said parties of the first part do hereby grant and convey unto the said parties of the second part, as joint tenants with the right of survivorship, [the Property].

\* \* \*

This transaction is pursuant to the terms of a written Voluntary Separation and Marital Property Agreement dated November 16, 1990 and as approved by the Circuit Court for Carroll County. . . .

\* \* \*

And the said parties of the first part hereby covenant that they have not done or suffered to be done any act, matter or thing whatsoever, to encumber the property hereby conveyed. . . .

As previously indicated, at the time of the transfer, the Property was subject to a mortgage naming Father and Mother as the borrowers. On December 12, 1993, Father petitioned the circuit court to direct the refinancing of that mortgage in the name of Father, Son and Daughter, pursuant to MD.CODE ANN. EST. & TRUSTS § 13–204 (1974, 2001 Repl.

Vol.).[4] The circuit court granted Father's petition on January 24, 1994 and Father subsequently refinanced the mortgage in his sole name.

In March of 1994, Father filed a *pro se* petition in the circuit court stating that in 1991, he and Mother "granted the [Property] to [Father] and to their two children [Son] and [Daughter], the children as joint tenants with right of survivorship, in accordance with [Father's] desire to have this property pass to his said children upon his death." The petition stated that it was desirable to refinance the mortgage on the Property and Father requested that the circuit court appoint him as guardian of Son and Daughter:

> [F]or the purpose of allowing him to refinance the current mortgage on the residence and to transfer the real property interests of his minor children to himself as [may be] required by the lender. In the event that [the current] lender or another lender will refinance this mortgage without the requirement that the minor children relinquish their interests, then [Father] will, with this court's consent, refinance the property as now titled.

The circuit court held a hearing on the petition and subsequently denied it, citing its "reluctance to take any action that would remove the children's names from the deed. . . ."

As the years passed, and for reasons not directly pertinent to the issues raised by this appeal, the relationship between Father and the children deteriorated. In July, 1998, Son and Daughter moved from the Property to reside with Mother.

---

4. Section 13–204 reads in pertinent part:
 § 13–204. **Authorization of specific transaction without appointment of guardian**
 (a) Authority of court.—If a basis exists . . . for assuming jurisdiction over the property of a minor or disabled person, the circuit court, without appointing a guardian, may authorize or direct a transaction with respect to the property, service, or care arrangement of the minor or disabled person. These transactions include but are not limited to:
 \* \* \*
 (2) Sale, mortgage, lease, or other transfer of property. . . .

On July 31, 2003, Father again refinanced the mortgage on the Property. He was listed as the sole borrower and neither Son nor Daughter were aware of or signed the deed of trust.

In August, 2004, Father and his current wife obtained a home equity line of credit, using the Property as security. Son, then 19, and Daughter, then 16, both signed the home equity deed of trust as grantors. Son testified, without contradiction, that Father told him that neither he nor Daughter would obligate themselves on the line of credit by joining in the deed of trust.

In April, 2007, Father and his wife moved from the Property and purchased a home in Halethorpe, Maryland.

On August 14, 2007, Father filed a complaint against Son and Daughter for Sale in Lieu of Partition of the Property. Father requested that the court adjust the shares of Son and Daughter to the proceeds to reimburse him for a portion of his mortgage, tax and insurance payments for the Property from July, 1998 (the date Son and Daughter moved to Mother's house). Son and Daughter filed their own complaint for Sale in Lieu of Partition of the Property on August 28, 2007 and the cases were consolidated by court order dated December 5, 2007.[5]

On May 13, 2008, the parties agreed to sell or auction the Property and place the proceeds of the sale with the clerk of the court, who would retain the funds in an interest bearing account until the circuit court ruled on how the funds should be distributed.

The circuit court conducted a two day merits hearing on January 26 and 27, 2009. At the hearing, Mother testified that she and Father had discussions at the time of the conveyance and that it was their intention that the conveyance be a gift to the children. Son testified that when he spoke with Father about the 2004 line of credit, Father assured him that he and Daughter would have no financial obligation to pay

---

**5.** Mother was originally a defendant in the children's suit. On November 20, 2007, Father added Mother as a defendant in his petition.

back the home equity line of credit. Daughter was 16 years old at the time the documents regarding the line of credit were executed. Father testified that he never planned on selling the Property and, therefore, never planned on asking the children for reimbursement for payments made on the Property.

The circuit court determined that Son and Daughter were obligated to contribute to Father's mortgage payments, taxes and insurance reimbursements and other "expenditures that preserve the property." The circuit court also denied Mother's request for her share of the proceeds of the sale pursuant to the Settlement Agreement. Specifically, the circuit court stated:

> The major issue among these parties is [Father's] claim for contribution. [Father] seeks contribution for two-thirds of all mortgage payments, taxes and insurance, he has made since July of 1998 [when Son and Daughter ceased living with him]. . . . The total amount he expended from July, 1998 through January of 2009, was $124,566.58. [Father] now seeks contribution of one-third of this sum from [Son] and one-third of this sum from [Daughter].
>
> There is little doubt that these sums have been paid by [Father], and there is no doubt that the refinancing that occurred during that period did not increase the indebtedness on the property and benefitted all. The only contention in this matter is that [Son and Daughter] contend that the Court should deny any claim for contribution asserted by [Father]. In reviewing the contentions made by [Son and Daughter], the Court must review the applicable law of contribution. Ordinarily, a co-tenant is entitled to contribution from his other co-tenants for payments made toward mortgage payments, taxes, and insurance and any repairs on a property. The general rule appears to be that while the Court has discretion in the matter, co-tenants have a right to contribution among themselves for expenditures that preserve the property. . . . . In this case, [Father] has paid mortgage payments, taxes and insurance on the premises, during the period of time when [Son and Daughter]

were not residing there, equaling $124,566.58, and he seeks reimbursement for the same.

The primary case relied on heavily by [Son and Daughter] is *Maas v. Lucas*, 29 Md.App. 521 [349 A.2d 655] (1975)....
The basic argument in *Maas, supra,* was that there is a presumption of gift by the father in that case in having paid off the mortgage. This Court sees the facts in that case as distinguishable, because unlike the facts in the instant case, in *Maas, supra,* there had been straw deeds declaring the property was conveyed unencumbered. Further, there was a complete release of the mortgage 25 years prior to the partition action. The Court of Special Appeals appeared to place emphasis on deeds evidencing that the title was unencumbered, and upon the fact the mortgage had been released and that the claim of the father in that case was well subject to laches and/or limitations.

In the instant case, [Father, Son and Daughter], took title to their interest in the Property by a conveyance from [Father and Mother] at a time when the property was clearly encumbered by mortgage debt.

Counsel for [Son and Daughter] argues that they are entitled to their one-third interest in this Property free and clear of any operative effect of even the then existing mortgage indebtedness or any claim of contribution by [Father]. He relies heavily on *Maas* for the basic proposition that the conveyance is an outright gift and that [Father] must not only absorb the costs of mortgage payments, taxes and insurance that he has made for many years, but must also pay from his share of the proceeds of the sale of the Property all of the outstanding mortgage indebtedness. There is also some evidence that [Son and Daughter] knowingly participated in the refinances of this Property and the existing indebtedness thereon.

The Court does not find that *Maas* is dispositive in this case, and believes that [Father] is entitled to recover a

proportionate share of the mortgage payments, taxes, and insurance he paid on this Property.

* * *

The bottom line result of all of this is that [Son and Daughter] acquired a two-thirds interest in this Property, which is a house on a 3–1/2 acre lot, as a result of the divorce of their parents, and that they take no greater interest in that Property than their parents had at the time the deed was executed, and that by far a large portion of the expenditures made by [Father] were in payment of the purchase price of the Property, including interest and further payment of taxes and insurance thereon. It would be inequitable, under the circumstances of the testimony developed at trial, for the Court to reduce or eliminate the contribution that is sought here.

The final issue for resolution by the Court is whether or not [Mother] is entitled to the Ten Thousand Dollar payment set forth in the parties' Agreement set forth above. She is entitled to Ten Thousand Dollars if she had transferred all of her interest in the Property to [Father]. That is not what occurred here. Effectively, all of her interest in the Property, together with a portion of [Father's] interest in the Property, was directly transferred to the parties' children. As such, the Court does not find that the payment, set forth in the Agreement, is due and payable to [Mother].

The Court, therefore, will enter Final Judgment in this matter granting sale in lieu of partition of the Property, and appointing a Trustee to make sale of the same and any other appropriate relief. The Court will delay entry of that Judgment for fifteen (15) days to allow the parties to consider its holding in this matter, and to hopefully resolve the situation by some form of post trial settlement among them.

An order to that effect was entered on April 9, 2009. Appellants filed a timely appeal from that order.

We shall discuss additional facts as required in this opinion.

DISCUSSION

The action below was tried without a jury; therefore, we "will review the case on both the law and the evidence. [We] will not set aside the judgment of the trial court on the evidence unless clearly erroneous, and will give due regard to the opportunity of the trial court to judge the credibility of the witnesses." Maryland Rule 8–131(c). We " 'must consider evidence produced at trial in a light most favorable to the prevailing party and if substantial evidence was presented to support the trial court's determination, it is not clearly erroneous and cannot be disturbed.' " *L.W. Wolfe Enters. v. Md. Nat'l Golf, L.P.,* 165 Md.App. 339, 343, 885 A.2d 826 (2005) (quoting *GMC v. Schmitz,* 362 Md. 229, 233–34, 764 A.2d 838 (2001), quoting in turn *Ryan v. Thurston,* 276 Md. 390, 392, 347 A.2d 834 (1975)).

However, where the trial court's decision " 'involves an interpretation and application of Maryland statutory and case law, our Court must determine whether the lower court's conclusions are 'legally correct' under a *de novo* standard of review.' " *L.W. Wolfe Enters.,* 165 Md.App. at 344, 885 A.2d 826 (quoting *Walter v. Gunter,* 367 Md. 386, 392, 788 A.2d 609 (2002)).

As we will explain, equitable principles confer upon a court broad discretion to allocate the proceeds of the sale of jointly owned property. Appellate courts afford considerable deference to a trial court's exercise of its discretion. *See, e.g., Wilson–X v. Dept. of Human Resources,* 403 Md. 667, 677, 944 A.2d 509, *cert. denied,* —— U.S. ——, 129 S.Ct. 101, 172 L.Ed.2d 83 (2008). However, deference has its limits. We do not defer to a lower court's exercise of discretion based upon an error of law, *Davis v. Davis,* 280 Md. 119, 125–26, 372 A.2d 231 (1977), nor when the court's ruling is " 'clearly against the logic and effect of facts and inferences before the court.' " *North v. North,* 102 Md.App. 1, 13, 648 A.2d 1025 (1994) (quoting *Shockley v. Williamson,* 594 N.E.2d 814, 815 (Ind. App.1992)).

## I. Father's Right to Contribution

Son and Daughter's principal argument to us is that Father's transfer of interests in the Property to them, as well as Father's subsequent payments for mortgage, property tax, insurance and similar expenses, were gifts. Relying on our decision in *Maas*, they contend that Father has no right to seek contribution for gifts and that the circuit court abused its discretion in ordering their respective shares of the net proceeds to be reduced by one-third of those expenses.[6]

Father, conversely, asserts that the conveyance to his children was not intended to be a gift but was rather in the nature of an "insurance policy," to guarantee that his children would receive the Property at his death. He argues that Son and Daughter had the burden of proving that the conveyance was a gift and that they failed to do so. Father contends that his request for contribution is justified by the fact that Son and Daughter indicated to him that they desired that the Property be sold. He asserts that the circuit court was correct in concluding that *Maas* is distinguishable from the present case. Before addressing the parties' specific contentions, it will be useful to review the pertinent law.

We begin with *Maas* itself. The pertinent facts of that case were:

---

**6.** At oral argument, counsel for Son and Daughter made it clear that their claim was limited to the net proceeds of sale only.

In addition, Son and Daughter advance two other arguments that need not detain us.

First, they contend that Father's behavior "drove them" from the Property when they left his household to reside with Mother. The circuit court concluded "[a]ssuming, for the moment, that there was a serious deterioration of the family relationship, the Court is unable to quantify the net effect of that relationship and calculate a basis to set off the contribution sought by [Father]...."

The second contention is that Father permitted waste to occur on the Property by failing to maintain it. Although the circuit court stated that there was "a certain degree of a lack of maintenance," it found that the evidence did not establish "a value that [could] be quantified in dollars attributable to the actions of [Father]."

After reviewing the record, we conclude that neither finding was clearly erroneous.

At the time of the dissolution of the marriage in 1943, [Maas] and his [soon-to-be-divorced] wife conveyed the property by straw deeds to a straw party who reconveyed it to appellant and his children as tenants in common. Both straw conveyances warranted the property specially and contained covenants that the grantors (parents) had done:

> "no act, matter or thing whatsoever to encumber the property hereby conveyed."

There was in existence at that time, however, a mortgage on the property executed by the real grantors, appellant and his wife, (as opposed to the straw party to whom they had represented that warranty). Less than one year later, appellant discharged the mortgage by full payment of the $4,770 balance due. The children did not assume any obligation under the mortgage, nor was the mortgage assigned to appellant upon discharge for subrogation or otherwise. The payment was made and full release recorded.
29 Md.App. at 532–33, 349 A.2d 655.

More than twenty-five years later, Maas filed an action for sale in lieu of partition and, in that proceeding, claimed that the portion of the proceeds to be paid to his children should be reduced by their proportionate shares of the mortgage pay-off. The circuit court agreed, on the basis that " 'it would be inequitable, even outrageous, to allow the children to force their father to assume the whole burden of the mortgage when they received the benefit of his payment discharging the mortgage.' " *Id.* at 534, 349 A.2d 655.

In a lucid and scholarly opinion written by Judge Thomas Hunter Lowe, this Court reversed the trial court's decision. Our decision was based upon three grounds. First, the transfer to the children was presumptively a gift and there was no evidence to overcome that inference. *Id.* Second, the property was expressly conveyed without encumbrances and the mortgage was released by Maas without any attempt to reserve a right of contribution by subrogation. *Id.* Finally, we distinguished Maryland cases holding that one co-tenant is liable for contribution for a mortgage payment made by another be-

cause, in all of those cases, both co-tenants were parties to the obligation, whereas Maas' children were not. *Id.* at 535–36, 349 A.2d 655.

We concluded:

[W]e know of no authority that would permit the chancellor to impose a personal debt upon the children where none ever existed. Upon remand the children should be relieved of the obligation to contribute to their father's mortgage which he discharged over a quarter of a century ago.

*Id.* at 536, 349 A.2d 655.

Son and Daughter contend that *Maas* is dispositive of the contribution issue. We agree, and, in explaining why, will elaborate on its analysis.

 As the circuit court noted, in a partition action, it has broad, discretionary authority to distribute the proceeds of sale to the parties. *Maas,* 29 Md.App. at 525–26, 349 A.2d 655 (citing, among other authorities, *Bowers v. Balto. G. & E. Co.,* 228 Md. 624, 629, 180 A.2d 878 (1962); *Dugan and Lyman, Trustees v. Mayor & Council of Baltimore,* 70 Md. 1, 8, 16 A. 501 (1889), and 1 J. Story EQUITY JURISPRUDENCE § 656(b) (14th ed. 1918)). There are, however, "certain general principles and guidelines to which [the court] must adhere" in exercising its equitable powers. *Maas,* 29 Md.App. at 526, 349 A.2d 655.

The "principles and guidelines" at issue in this case pertain to the legal effect of Father's execution of the 1992 deed to Son and Daughter and his subsequent mortgage, tax and insurance payments. Father maintains that the conveyance was intended to facilitate the transfer of title to Son and Daughter at his death. Be that as it may, Father does not seek to set aside the conveyance on the basis that his original intent was frustrated by the sale of the house prior to his death; instead, he contends that he has a right of contribution from the children because they were co-tenants. The deed contains no language suggesting that Father intended to retain such a right. While this is not necessarily fatal to Father's case, the disconnect between what Father testified

was his initial intent, the relief Father sought from the circuit court, and the actual language of the deed create obstacles that he must overcome in order to prevail.

The Restatement (Second) of Trusts (1959) (the "Restatement") summarizes the applicable principles.

When a person transfers property to another without consideration, there is a presumption that the transferor intended to retain the beneficial interest in the property. When this occurs, the property is said to be subject to a "resulting trust" in favor of the transferor. In the words of the Court of Appeals:

> "It is well settled as a general rule that where the purchase price is paid by one person and the title is taken in the name of another, there arises in favor of the person paying the purchase money a resulting trust, and the holder of the legal title becomes a trustee for him. Of course, where a person attempts to establish a resulting trust, the burden is on him to prove such trust, and it must be made out by plain and unequivocal evidence [. . . .]"

*WSSC v. Utilities,* 365 Md. 1, 38, 775 A.2d 1178 (2001) (quoting *Fitch v. Double "U" Sales Corp.,* 212 Md. 324, 330, 129 A.2d 93 (1957)); *see also* Restatement § 440 (as a general rule, when "a transfer of property is made to one person and the purchase price is paid by another, a resulting trust arises in favor of the person by whom the purchase price is paid. . . .")

Resulting trusts do not occur when the transfer is intended as a gift. Restatement § 405 ("Where the owner of property transfers it without declaring any trust, the transferee does not hold the property upon a resulting trust although the transfer is gratuitous.")

Furthermore, Restatement § 442 provides:

> Where a transfer of property is made to one person and the purchase price is paid by another and the transferee is a wife, child or other natural object of bounty of the person by whom the purchase price is paid, a resulting trust does not

arise unless the latter manifests an intention that the transferee should not have the beneficial interest in the property.

The American Law Institute's commentary to § 442 is pertinent:

a. *To what relatives rule is applicable. . . . .*

The rule stated in this Section is applicable where the payor and transferee respectively are in the relation [of] . . . father and child. . . . It is immaterial that the child is an adult. . . .

\* \* \*

b. *Effect of the rule.* The fact that the transferee is a wife, child or other natural object of bounty of the payor is more than merely a circumstance tending to rebut the inference of a resulting trust. It is of itself a circumstance sufficient to raise an inference that a gift was intended, and the burden is upon the payor seeking to enforce a resulting trust to prove that he did not intend to make a gift to the transferee.

Section 442 is consistent with Maryland law. *See Brandenburg v. Harshman*, 193 Md. 104, 110, 65 A.2d 906 (1949) ("[A] transfer of property from a parent to a child is generally considered a gift. . . ."); *Maas v. Lucas*, 29 Md.App. at 534, 349 A.2d 655.

■ The presumptions established by § 442 may be rebutted if the transferor or payor "manifests an intention that the transferee should not have the beneficial interest in the property. . . ." Restatement § 443. While parol evidence is admissible to prove the transferor's intent, such evidence should be viewed "with great caution" in cases attempting to establish a resulting trust upon real estate " 'because [the parol evidence] impeaches a document executed according to law and recorded as evidence of title. Any other rule would disturb the reliance which the public places upon land title instruments.' " *Taylor v. Merc.–Safe Deposit and Trust*, 269 Md. 531, 539, 307 A.2d 670 (1973) (quoting *Battle v. Allen*, 250 Md. 672, 675, 245 A.2d 590 (1968)); *see also WSSC v. Utilities*, 365 Md. at 38, 775

A.2d 1178. The commentary to Restatement § 443 clarifies the appropriate evidentiary focus:

The intention of the payor not to make a gift to the transferee may be shown not only by oral declarations of his intention, but also by the circumstances under which the transfer is made.

\* \* \*

*It is the intention of the payor at the time of the transfer and not at some subsequent time which determines whether a resulting trust arises* .... The conduct of the payor and of the transferee subsequent to the transfer, however, may be such as to show that at the time of the transfer the payor did not intend to make a gift to the transferee. Thus, the fact that the payor manages the property, collects rents, pays taxes and insurance, pays for repairs and improvements, or otherwise asserts ownership, and the acquiescence by the transferee in such assertion of ownership, is evidence to rebut the inference of an intention by the payor to make a gift to the transferee.

(Emphasis added.)

Finally, Restatement § 457 provides that "[w]here a transfer of property is made to one person, no resulting trust arises merely because another person subsequently pays or assumes an obligation to pay for the property."

█ A party wishing to establish a trust, whether express, implied or resulting, must do so by clear and convincing evidence. *From the Heart Church Ministries v. African Methodist Episcopal Zion Church,* 370 Md. 152, 183, 803 A.2d 548 (2002); *Levin v. Levin,* 43 Md.App. 380, 387, 405 A.2d 770 (1979) (evidence of resulting trust must be "clear, unequivocal, and convincing," citing *Siemiesz v. Amend,* 237 Md. 438, 441, 206 A.2d 723 (1965) and *Fitch,* 212 Md. at 330, 129 A.2d 93); *see also Battle,* 250 Md. at 675, 245 A.2d 590 ("evidence must be so clear and strong as to remove every reasonable doubt as to the existence of the trust") (citing *Gray v. Harriet Lane Home,* 192 Md. 251, 265, 64 A.2d 102 (1949) and *Sands v.*

*Church of the Ascension,* 181 Md. 536, 540, 30 A.2d 771 (1943)).

■ In addition, the " 'transaction must be judged as of its date, and not upon the basis of facts occurring subsequent to that date.' " *Levin,* 43 Md.App. at 387, 405 A.2d 770 (quoting *Lacey v. Van Royen,* 259 Md. 80, 89, 267 A.2d 91 (1970)).[7]

We now turn to the contentions of the parties.

■ Father's argument that Son and Daughter have not met their burden to show that the transfer to them was a gift is misplaced. The 1992 conveyance, which was without consideration, was presumptively a gift by Father to Son and Daughter. Father can rebut that presumption by demonstrating that, at the time of the transfer, he intended to retain a beneficial interest (namely, the right to contribution) in the property interests conveyed to his children. His intention must have been "manifest." Restatement § 442. While parol evidence is admissible, it is to be "viewed with great caution." Finally, Father must prove his intention to retain a beneficial interest in the Property by clear and convincing evidence.

---

7. In *United States v. District of Columbia,* 596 F.Supp. 725, 733 (D.Md. 1984), the District Court concluded that the rule enunciated in *Levin* and *Lacey* was modified by the holding of *Taylor v. Merc.–Safe,* 269 Md. at 541, 307 A.2d 670, bringing Maryland into conformity with the evidentiary standard set out in Comment a. to Restatement § 443. We do not read *Levin* and *Lacey* as standing for the proposition that parol evidence of events occurring after the transaction is inadmissible but rather that such evidence is admissible only to prove the intent of the parties at the time of the transaction. *Taylor* is an example of the rule in application—the Court of Appeals concluded that evidence of a decedent's exercise of dominion and control over property titled by him in the name of another (without informing the owner of record) was sufficient to show that, at the time the property was purchased, the decedent purchased the property with his own funds intending, eventually, to title it in his own name. 269 Md. at 541, 307 A.2d 670. The admissibility, as opposed to the probative value, of the post-transaction evidence does not appear to have been an issue raised in either the trial court or the Court of Appeals. There is certainly nothing in *Taylor* that suggests that the Court was intending to change Maryland law and *Levin* cites *Taylor.* 43 Md.App. at 387, 405 A.2d 770

Taking the evidence in the light most favorable to Father, there is not clear and convincing evidence that Father manifested an intention to subject the interests conveyed to his children to a right of contribution. First, there was no written expression of such an intent. While the Property was subject to a mortgage at the time of transfer, the deed to the children conveys their interest to them without any conditions, reservations or restrictions. In addition, the deed contains a specific covenant that the grantors had not encumbered the Property. This covenant provides a cause of action against Father if the value of Son's or Daughter's interest in the Property is reduced by an encumbrance created by Father. *Marathon Bldrs. v. Polinger*, 263 Md. 410, 415–16, 283 A.2d 617 (1971). The covenant against encumbrances is indicative of Father's intention to convey interest to his children free of the existing mortgage. *Maas*, 29 Md.App. at 534, 349 A.2d 655.

There is nothing in the testimony of Mother and Father that supports the conclusion that the transfer was not intended as a gift or that Father made manifest, at the time of the transfer or thereafter, that he was intending to reserve a right to seek contribution. Mother testified that she and Father discussed their intentions regarding the transfer of the Property to the children and that they both intended it as a gift. Father denied ever discussing his intentions with Mother because "[a]t the time I transferred it had nothing to do with her."

Father testified that he transferred his interest in the Property to Son and Daughter as "an insurance policy in case I died driving the tractor trailer one night." He stated that it was his intention, at the time of the transfer, to die in the Property and, thus, never intended to ask the children for any contribution. He also testified that when he asked Daughter, then 16 years old, to sign the home equity deed of trust in 2004, he did not tell her that, by signing the home equity deed of trust as a property owner, she placed her interest in the Property at risk if the loan was not paid back. Son testified that Father told him that he and Daughter would not be financially obligated by the line of credit taken out in 2004.

Father's mortgage, tax and insurance payments are not, in and of themselves, sufficient evidence to rebut the presumption that the conveyance was a gift. Restatement § 457.

■ Evidence is "clear and convincing" when it sustains "a degree of belief greater than . . . a fair preponderance of the evidence, but less than the burden of proof beyond a reasonable doubt. . . . It has been said that [such] proof must be 'strong, positive and free from doubt' and 'full, clear and decisive.'" *Berkey v. Delia*, 287 Md. 302, 318, 413 A.2d 170 (1980) (quoting *Stone v. Essex County Newspapers, Inc.*, 367 Mass. 849, 871, 330 N.E.2d 161 (1975)). *See also Coleman v. Anne Arundel Police*, 369 Md. 108, 125–126 n. 16, 797 A.2d 770 (2002) ("to be clear and convincing, evidence should be 'clear' in the sense that it is certain, plain to the understanding, and unambiguous and 'convincing' in the sense that it is so reasonable and persuasive as to cause you to believe it") (quoting Maryland Pattern Jury Instructions 1:8 (3d ed. 2000)).

The evidence does establish that Father's 1992 expectation that he would reside in the Property until his death was frustrated by later events. The apparent alienation between Father and his children is indeed unfortunate, but it is not a basis for Father's attempt to change retroactively the conditions under which he transferred interests in the Property to Son and Daughter. We conclude that Father failed to present any evidence, much less clear and convincing evidence, to rebut the presumption that the conveyance of partial interests in the Property, and the subsequent payments, were gifts to Son and Daughter.

In his brief and at oral argument, Father emphasized that *Maas* is distinguishable from the present case because, in *Maas*, the mortgage had been satisfied more than twenty years prior to the filing of the partition action. This is certainly correct but there is nothing in *Maas*, nor in the Restatement, to suggest that the *time* of the payment is determinative. Instead, the focus is on the donor's *intent* at the time the gift is made.

Father also contends that his children's shares are subject to his claim of contribution because, as co-tenants, they are responsible for their pro-rata share of the mortgage, taxes and related payments. He cites *Kamin–A–Kalaw v. Dulic,* 322 Md. 49, 55, 585 A.2d 216 (1991) and *Spessard v. Spessard,* 64 Md.App. 83, 87, 494 A.2d 701 (1985). These cases are readily distinguishable as neither involves property that was given by one of the co-owners to the other and, in each case, both parties were personally obligated on the mortgage. *Kamin–A–Kalaw,* 322 Md. at 51–52, 585 A.2d 216; *Spessard,* 64 Md.App. at 86, 494 A.2d 701. Father cites no cases in which a right of contribution was enforced against the share of a co-tenant who was not a party to the underlying debt and *Maas* stands squarely for the proposition that a co-tenant who is a donee of the payor is not liable.

In *Pino v. Clay,* 251 Md. 454, 457, 248 A.2d 101 (1968), the Court of Appeals held that co-tenants, who had inherited their interests from a decedent who had entered into a mortgage, were liable for contribution for mortgage payments. The Court relied on § 105 of the Restatement of Restitution (1937), which provides:

1) Where two persons are tenants in common or joint tenants and one of them has taken reasonably necessary action for the preservation of the subject matter or of their common interests, he is entitled to indemnity or contribution, enforced by means of a lien upon the interest of the other

(a) if he made a request to the other to join in such preservation, or

(b) without such request, if action was immediately necessary and the other was not available.

While the specific issue in *Pino* was mortgage payments, Father's payments of insurance and real estate taxes were also reasonably necessary to preserve the Property. There was no evidence, however, that Father ever requested that the children contribute to the mortgage, tax or insurance payments and, indeed, Father testified that it had not been his

intention to seek contribution from them. Under the circumstances, it would be inequitable to impose an obligation to contribute upon Son and Daughter.

We conclude, as we did in *Maas*, that the circuit court erred in imposing an obligation of contribution upon Son and Daughter.

## II. Mother's Share in the Proceeds

■ Mother argues that the circuit court erred in holding that she is not entitled to receive up to $10,000 from Father's share of the proceeds of the sale. In disposing of this contention, the circuit court stated:

> The final issue for resolution by the Court is whether or not [Mother] is entitled to the Ten Thousand Dollar payment set forth in the parties' Agreement set forth above. She is entitled to Ten Thousand Dollars if she had transferred all of her interest in the Property to [Father]. That is not what occurred here. Effectively, all of her interest in the Property, together with a portion of [Father's] interest in the Property, was directly transferred to the parties' children.

In so concluding, the circuit court erred. The Separation Agreement called for Mother and Father to "to transfer all of their right title and interest in the marital home to [Father]." Mother would have been entitled to a portion of Father's share of the proceeds had she performed her obligations under the Separation Agreement. However, she is also entitled to payment if she tendered "substitute performance" acceptable to Father. *See* Restatement (Second) of Contracts § 278(1) (1981) ("If an obligee accepts in satisfaction of the obligor's duty a performance offered by the obligor that differs from what is due, the duty is discharged.") In other words, if Father requested that Mother sign a deed transferring ownership of the Property to Father, Son and Daughter, instead of to only Father, Mother will be deemed to have discharged her obligation.

The evidence strongly supports this conclusion. During the trial, Father testified as follows:

Q. [Son's and Daughter's counsel]: ... [D]id [you] discuss with [Mother] the fact that you were going to transfer ... part of her interest or all of her interest in the home to [Son and Daughter]? You never discussed that with her?

A.: At the time I transferred it had nothing to do with her.

Q. That wasn't my question. ... Did you not discuss it with [Mother]?

A.: To my best recollection, I don't remember.

\* \* \*

Q. [Son and Daughter's counsel]: And you indicated that [Mother is] entitled to some amount of money, perhaps up to $10,000 of the net proceeds of the sale after all payouts are made for liens, true?

A: There's a statement that was stipulated between the lawyers on page 10 [of the Marital Separation Agreement] that she would receive one-half of the net proceeds of sale after the mortgage and payments were done.

Q.: Okay. And you intend to honor that, true?

A.: As long as I make over a $10,000 profit.

For her part, Mother testified that she discussed the proposed conveyance to the children with Father; however, Mother did not testify as to what discussions, if any, they had regarding the effect that the joint conveyance to the children would have on her right to receive a share of the proceeds upon sale.

While the evidence supports the theory of substituted performance, it does not completely rule out another possibility. Alternatively, Mother and Father may have negotiated a modification of the Separation Agreement to the effect that Mother would waive her right to a share of the proceeds of sale of the Property in return for Father's decision to convey the Property to Father, Son and Daughter. In light of the sparse record and the absence of any pertinent findings by the circuit court, we will remand this portion of the case for the

court to make appropriate findings of fact and conclusions of law. The circuit court may, in its discretion, hold a hearing to permit Mother and Father to provide additional evidence.

For the guidance of the parties, we add the following in the event that Father asserts that Mother agreed to forego her right to receive a share of the proceeds.

The Separation Agreement is a contract and, as such, the rules of contract interpretation apply to it. *Langston v. Langston,* 366 Md. 490, 505–06, 784 A.2d 1086 (2001) (citing *Goldberg v. Goldberg,* 290 Md. 204, 212, 428 A.2d 469 (1981)). A court interprets a contract according to the plain and ordinary meaning of its language in the context of the agreement itself. *Langston,* 366 Md. at 506, 784 A.2d 1086 (citing, among other cases, *Fister v. Allstate Life Ins. Co.,* 366 Md. 201, 210, 783 A.2d 194 (2001) and *Cheney v. Bell Nat'l Life Ins. Co.,* 315 Md. 761, 766, 556 A.2d 1135 (1989)).

As is typical for such contracts, the Separation Agreement contained an integration clause and provided that no modification of any term would be effective "unless made in writing and signed by the parties." As the deed effected a conveyance of the Property different than that called for in the Separation Agreement, but was nonetheless signed by both Mother and Father, the deed could be considered to be a written modification of Section 8 of the Separation Agreement, which reads in pertinent part:

It is the intention of the parties, upon execution of this Agreement, to transfer all of their right title and interest in the marital home to Husband, who shall assume all of the obligations of the mortgage. . . .

\* \* \*

In consideration for relinquishing all of her right, title and interest in the marital home to Husband, Wife shall receive, upon the sale of said home, one-half of the net proceeds of said home . . . up to a maximum of Ten Thousand Dollars ($10,000.00).

A contract is ambiguous "when it is susceptible to more than one interpretation when examined by a reasonably prudent person." *Langston,* 366 Md. at 506, 784 A.2d 1086 (citations and internal quotation marks deleted). While the Separation Agreement and the deed, read together, clearly reflect the decision to transfer interests in the Property to Son and Daughter, they do not address whether Mother and Father intended that such a transfer would relieve Father of his obligation to pay Mother a portion of the proceeds if the Property were sold. Therefore, parol evidence is admissible to determine the parties' intentions. *Canaras v. Lift Truck Services, Inc.,* 272 Md. 337, 351, 322 A.2d 866 (1974) (citing *Mascaro v. Snelling & Snelling,* 250 Md. 215, 229, 243 A.2d 1 (1968)). However, a waiver by Mother of her right to receive a share of the proceeds of the sale "must be clearly established and will not be inferred from equivocal acts or language." *Myers v. Kayhoe,* 391 Md. 188, 206, 892 A.2d 520 (2006) (citing *Questar v. Pillar,* 388 Md. 675, 687, 882 A.2d 288 (2005)).

In addition, if the circuit court concludes that Mother gave up her right to share in the proceeds, either through agreement or waiver, the court should explain why it does not credit Father's testimony that he intended to honor the contract provision if the proceeds of sale were sufficient.

**THE JUDGMENT OF THE CIRCUIT COURT FOR CARROLL COUNTY IS REVERSED IN PART AND VACATED IN PART. THE CASE IS REMANDED TO THAT COURT FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY APPELLEE.**