26 A.3d 1050

Alda A. ANDERSON

v.

Nero JOSEPH, et al.

No. 554, Sept. Term, 2010.

Court of Special Appeals of Maryland.

July 11, 2011.

Reconsideration Denied Sept. 13, 2011.

Alda A. Anderson, Las Vegas, NV, for appellant.

Erwin R.E. Jansen, Washington, DC, for appellee.

Panel: GRAEFF, HOTTEN, JAMES A. KENNEY, III (Retired, Specially Assigned), JJ.

GRAEFF, J.

This appeal involves the division of proceeds from a trustee's sale of property located at 2309 Sheridan Street, in Hyattsville, Maryland (the "Property"). It addresses the authority, and the impact, of one cotenant obtaining a mortgage on jointly owned property without the consent of the other cotenant.

Alda A. Anderson, appellant, owned the Property as a tenant in common with Nero Joseph, appellee, who took out a $49,552.79 loan on the Property without her consent. After the sale of the Property, the trustee proposed a distribution schedule that deducted this loan from the proceeds prior to determining the 50% share of each of the parties. Ms. Anderson contends that this was improper, and that the loan should have been deducted only from Mr. Joseph's share of the proceeds. On appeal, she challenges the order of the Circuit Court for Prince George's County denying her Exception to the Trustee's Report of Sale.

For the reasons set forth below, we reverse, in part, the judgment of the circuit court.[1]

## FACTUAL AND PROCEDURAL BACKGROUND

This is the second time this Court has addressed claims involving the Property. In our prior unreported opinion, *Joseph v. Anderson*, No. 2792, Sept. Term 2006, slip op. 1–6 (filed Apr. 15, 2008), we set forth the facts leading up to the first appeal. In 1989, Ms. Anderson purchased the Property and gifted a 50% interest in the Property to her brother, Terrence Anderson. Terrence's wife, Drucilla Anderson,[2] subsequently was added to the deed, sharing Terrence's 50% interest. The half interests were held as tenants in common.

In 2002, Terrence died. At some point thereafter, Drucilla sought to refinance the mortgage and transfer her half interest in the Property to her son, Nero Joseph. When Ms. Anderson received the closing documents from the title company, she saw that the new deed was in the name of Mr. Joseph only. Ms. Anderson contacted the title company and/or the bank to add her name to the new deed. When she was advised that adding her name to the deed would delay

---

1. In her brief, Ms. Anderson further argued that the court abused its discretion in denying her motion to show cause, which requested that the trustee, Erwin Jansen, be ordered to pay for her losses due to his breach of his fiduciary duty as trustee. She contended that Mr. Jansen's breach caused delay in the distribution of the sale proceeds, including interest of "at least" $500.00, plus legal fees incurred due to the exception and the show cause motion she was forced to file. At oral argument, however, Ms. Anderson withdrew this claim, recognizing that Mr. Jansen, as a court-appointed trustee, had judicial immunity. *See D'Aoust v. Diamond*, 197 Md.App. 195, 207, 13 A.3d 43 (2010) (trustees traditionally are judicial officers when appointed by the court, and as such, they are entitled to judicial immunity), *cert. granted,* 418 Md. 586, 16 A.3d 977 (2011). Accordingly, we will not address whether Mr. Jansen's actions, or inactions, constituted a breach of his fiduciary duty. We further note that, because Ms. Anderson represented herself, she did not "incur" legal fees, and therefore, she would not be entitled to recover attorney's fees from Mr. Jansen. *See Frison v. Mathis*, 188 Md.App. 97, 109, 981 A.2d 57 (2009).

2. Because there are several people with the last name Anderson, we will refer to Terrence and Drucilla Anderson using their first names.

refinancing, and that the mortgage could not be paid without the refinancing, Ms. Anderson agreed to sign the deed provided that Mr. Joseph, immediately after the closing, would sign a quitclaim deed to put her name back on the title. After closing, however, Mr. Joseph refused to sign the quitclaim deed.

On June 23, 2005, Ms. Anderson filed, in the Circuit Court for Prince George's County, a request for declaratory and other relief, asking that the court reinstate her interest in the Property and order its sale in lieu of partition. Following a bench trial on December 7, 2006, the circuit court issued an order declaring that the title to the Property be held half in the name of Ms. Anderson and half in the name of Mr. Joseph, as tenants in common. The court declined to order a sale in lieu of partition, opting instead to give the parties the opportunity to explore the issue. On April 15, 2008, this Court affirmed the judgment of the circuit court in an unreported opinion.

On May 27, 2008, Ms. Anderson filed a Motion for Sale and Appointment of Trustee, asserting that Mr. Joseph refused to list the Property for sale and had collected rent and insurance money on the Property without paying any profits he made to her. She requested that the court: (1) order a sale in lieu of partition; (2) require Mr. Joseph to render an accounting as to monies collected from rent and other sources and pay 50% of any profits he made to her; and (3) award Ms. Anderson reasonable legal fees and costs.

On July 15, 2008, the court appointed Erwin R.E. Jansen, Esquire, as trustee to sell the Property and "divide the monies resulting from the sale ... among the parties according to their respective rights." Pursuant to the court's order, Mr. Jansen sold the Property by private sale on January 8, 2009.

On March 25, 2009, Mr. Jansen filed a Trustee's Report of Sale, indicating that the Property had been sold for $275,000, and the cash due to sellers was $95,240.47. In his report, Mr. Jansen also indicated that Luis F. Gomez, Jr., on behalf of the law firm Tomes & Salter, LLC, had contacted him regarding a

lien it had against the property in the amount of $18,985.02. Mr. Jansen noted that Mr. Joseph and Mr. Gomez had agreed to resolve the lien, which was for unpaid attorney's fees, in exchange for Mr. Joseph's payment of $12,000 to Tomes & Salter, LLC.

Mr. Jansen requested that the court ratify the sale, approve his Trustee's fees, and assign the monies to be distributed by the Trustee to each party. Pursuant to Mr. Jansen's report, the proceeds would be distributed as follows: (1) $46,364.37 to be issued to Ms. Anderson; (2) $34,364.37 to be issued to Mr. Joseph; (3) $12,000 to be issued to Tomes & Salter, LLC; and (4) $2,511.73 to be issued to Mr. Jansen. Attached to the Trustee's Report of Sale was a certificate of service indicating that a copy of the report was mailed on March 23, 2009, to Ms. Anderson, Mr. Joseph, and Mr. Luis F. Gomez, Jr., Mr. Joseph's previous counsel.

On July 24, 2009, Ms. Anderson filed an Exception to the Trustee's Report of Sale, asserting that she did not receive information regarding the sale of the Property until July 20, 2009. She noted that the form attached to the Trustee's Report of Sale indicated a payment of $49,533.23 to Bank of America from the sale of the proceeds,[3] but she was unaware of any encumbrance on the Property other than the first mortgage of approximately $103,000.00. She argued that, because the Property was in the sole name of Mr. Joseph since early 2005, she had no knowledge of the encumbrance on the Property, and if Mr. Joseph did encumber the Property without her knowledge or authorization, "he should be totally and solely obligated . . . to repay that debt." Ms. Anderson further asserted that she had not received a copy of Mr. Jansen's expenses and fees. She requested that she be pro-

---

**3.** In her Exception to the Trustee's Report of Sale, Ms. Anderson indicates that the payment for the Bank of America loan was $49,533.23. Although this number is consistent with the payoff amount listed on the HUD–1 in the record extract, the most recent copy of the HUD–1 in the Record indicates that the payoff amount was $49,552.79. The latter amount is the figure used by the Trustee and the figure that we will use in our calculations.

vided further information regarding the Bank of America loan prior to court approval of the Trustee's Report of Sale.

On October 5, 2009, Ms. Anderson filed a Motion to Show Cause, noting that she had been advised that her Exception to the Trustee's Report of Sale would not be heard until the Trustee filed a response, but Mr. Jansen had refused to file a response. She asserted that Mr. Jansen had "breached his fiduciary duty" to her by: (1) failing to keep her fully informed regarding the sale of the Property; and (2) failing to respond to her exception to his report, which denied her access to the proceeds of the sale of the Property. Ms. Anderson requested that the court: (1) order Mr. Jansen to show cause why he should not be removed as trustee and reimburse her for any loss, including interest on the sale proceeds and legal fees; (2) review her exception to the report and enter an order increasing her portion of the net proceeds by one-half of the payment to Bank of America; (3) order Mr. Jansen and Mr. Joseph to pay her legal fees in the amount of $2,500; and (4) order Mr. Joseph to pay her $1,000 "for his failure to disclose his responsibility for the Bank of America debt," which caused a delay in the distribution of the sale proceeds.

On October 7, 2009, Mr. Joseph filed an answer, asserting that he had obtained the Bank of America loan to make necessary repairs to the basement of the Property following a "massive flood." He contended that Ms. Anderson "knew about the damage[ ] to the basement from her mother-in-law, who was a close friend of my older sister," but she never offered assistance or requested to "come and view the damage herself." Mr. Joseph indicated that he had informed Mr. Jansen of the Bank of America loan and had provided him with receipts for the repairs to the basement, and he requested that the court review the receipts if it considered Ms. Anderson's exceptions. Mr. Joseph asserted that he was not responsible for Ms. Anderson's legal fees.

On November 17, 2009, Ms. Anderson filed a reply to Mr. Joseph's answer. She argued that, even if Mr. Joseph did use

the loan to repair flood damage to the property, she should not be obligated for the repairs because "she knew nothing of any alleged damage or the loan and [Mr. Joseph] made the alleged expenditure for his and hi[s] mother's benefit." She again requested that the court: (1) find Mr. Joseph solely liable and responsible for the Bank of America loan; (2) recalculate the proceeds from the sale of the Property to require Mr. Joseph to repay the loan out of his portion of the proceeds; and (3) order Mr. Joseph to pay her legal fees in the amount of $2,500, in addition to any additional fees and expenses incurred as a result of Mr. Joseph's actions.

On December 10, 2009, Mr. Joseph filed a letter with the court, addressing the allegations in Ms. Anderson's Motion to Show Cause and reply. Mr. Joseph reiterated that he took out the Bank of America loan to repair damage caused by flooding in the basement, and he provided Mr. Jansen with receipts for such repairs. He requested that the court consider several attached documents, which included, *inter alia,* the following: (1) pictures of the flooded basement; (2) a local newspaper article regarding the flood; and (3) a letter from the purchaser of the property acknowledging the "excellent" condition of the basement, as well as the new appliances in the kitchen and basement.

On February 2, 2010, the court held a hearing on Ms. Anderson's motions. Ms. Anderson testified that the only correspondence she had received from Mr. Jansen regarding the Property was a letter notifying her that the court had appointed him to sell the Property. She never received notification from Mr. Jansen that the Property had been sold. Instead, she found out several months later when she was contacted by Mr. Joseph's previous counsel, Mr. Gomez. She subsequently received copies of the documents associated with the sale, and she discovered the Bank of America loan. Ms. Anderson contacted Mr. Jansen and advised that she had not authorized any such loan, and she asked that he investigate it further. Mr. Jansen told her that it "was not his job" to do so. At that point, she filed an exception to Mr. Jansen's report, and after Mr. Jansen failed to respond to her exception, she

filed a motion to show cause why he should not be removed as trustee and ordered to pay for her losses.

With regard to the Bank of America loan, Ms. Anderson asserted that, although Mr. Joseph was entitled to encumber his half interest in the Property, he had no right to encumber her half interest. She stated that she was not aware of the loan, and she requested that the repayment of the loan not be paid out of her portion of the proceeds of the sale of the Property.

Mr. Joseph then testified that he obtained the Bank of America loan to repair a flood in the basement of the Property, as well as to do some work on the kitchen.[4] He acknowledged that he did not discuss the flood or the loan with Ms. Anderson, explaining: "We weren't talking, basically. She never spoke to me. She never lived in Maryland. She lives in Las Vegas." Mr. Joseph stated that he had spoken about the flood with Mr. Gomez, his previous counsel, as well as Mr. Jansen, to whom he gave all of the receipts for the repairs.

Mr. Jansen testified that Ms. Anderson advised him several months earlier that she had not received notice of the sale.[5] He testified, however, that he did send her a copy of his report of sale. Ms. Anderson brought to his attention the dispute over the Bank of America Loan, but he told her that he "did not believe that [he] had any authority or obligation to rectify that dispute." He also confirmed that, on one occasion, Mr. Joseph brought several receipts to his office regarding expenses he had incurred for renovations, but he had misplaced them. At the conclusion of the hearing, the court indicated that it would "take the matter under advisement."

---

4. Mr. Joseph later clarified that it was not a loan, but an open line of credit, of which he had paid a portion, but not all, prior to the sale of the Property. Because the parties refer to it as a loan, and Mr. Joseph ultimately used the line of credit, we will refer to the transaction as a loan.

5. The transcript erroneously refers to Mr. Jansen throughout the hearing as "Mr. Jackson." We will refer to him as Mr. Jansen.

On April 5, 2010, the court issued its order. Without any explanation of its reasons, the court denied Ms. Anderson's "Motion to Show Cause as to the request of the removal of the Trustee," and it denied the Exception to the Trustee's Report of Sale.

This timely appeal followed.

## STANDARD OF REVIEW

When an action is tried without a jury, "the appellate court will review the case on both the law and the evidence. It will not set aside the judgment of the trial court on the evidence unless clearly erroneous, and will give due regard to the opportunity of the trial court to judge the credibility of the witnesses." Md. Rule 8–131(c). " 'A factual finding is clearly erroneous if there is no competent and material evidence in the record to support it.' " *Hillsmere Shores Improvement Ass'n, Inc. v. Singleton,* 182 Md.App. 667, 690, 959 A.2d 130 (2008) (quoting *Hoang v. Hewitt Ave. Assocs., LLC,* 177 Md.App. 562, 576, 936 A.2d 915 (2007)). "When the ruling of a trial court requires the interpretation and application of Maryland case law," however, "we give no deference to its conclusions of law." *Elderkin v. Carroll,* 403 Md. 343, 353, 941 A.2d 1127 (2008).

A court's order to partition property and distribute proceeds of a sale pursuant to Md.Code (2010 Repl.Vol.) § 14–107(a) of the Real Property Article, is equitable in nature, and the court has broad discretion in the allocation of the proceeds. *Meyer v. Meyer,* 193 Md.App. 640, 651, 998 A.2d 921 (2010); *Maas v. Lucas,* 29 Md.App. 521, 525–26, 349 A.2d 655 (1975). As this Court recently explained, although we generally give deference to a trial court's exercise of its discretion, we "do not defer to a lower court's exercise of discretion based upon an error of law, nor when the court's ruling is 'clearly against the logic and effect of facts and inferences before the court.' " *Meyer,* 193 Md.App. at 651, 998 A.2d 921 (citations and quotations omitted).

**250**

## DISCUSSION

■ Ms. Anderson argues that the court erred in dismissing her Exception to the Trustee's Report of Sale, asserting that the Bank of America loan should not have been paid from her one-half interest in the net sales proceeds. She states that, although the circuit court declared in 2006 that she had a half interest in the Property, it remained titled in the sole name of Mr. Joseph, and therefore, she "had no access to, or information regarding" the Property, and she was unaware that Mr. Joseph had encumbered the Property without her consent. Although she acknowledges that Mr. Joseph was "free to encumber his own interest in the property," Ms. Anderson asserts that he "had no authority or right to encumber her interest," without her authority or consent, which she did not provide. She contends that, in denying her Exception to the Trustee's Report of Sale, the circuit court permitted Mr. Joseph to encumber her interest, "thereby reducing her interest to less than the 50%" previously declared by the circuit court.

Mr. Joseph did not file a brief or otherwise participate in this appeal.

The Court of Appeals recently defined a tenancy in common as "a type of concurrent estate in which multiple parties have interest in a single property." *Fagnani v. Fisher*, 418 Md. 371, 382, 15 A.3d 282 (2011). Here, there is no dispute that Ms. Anderson and Mr. Joseph were tenants in common.

As tenants in common, Ms. Anderson and Mr. Joseph each had " 'an equal right to possess, use, and enjoy the property.' " *Id.* (quoting *Downing v. Downing*, 326 Md. 468, 474, 606 A.2d 208 (1992)). They each possessed the authority to sell or encumber their own individual interests. RICHARD R. POWELL, POWELL ON REAL PROPERTY § 50.06[4] (Michael A. Wolf ed., 2010) ("Without consent of cotenants, each tenant in common may sell or encumber his or her property interest, and thus inject a stranger into the cotenancy.").

The question here is whether Mr. Joseph had the authority to encumber Ms. Anderson's one-half interest in the Property

without her authority or consent. A review of case law in Maryland and other jurisdictions indicates that the answer is no.

The Court of Appeals has explained that "[o]ne tenant in common has no right to alter or change the property to the injury of the other without his assent." *Burnham v. Baltimore Gas & Electric Co.*, 217 Md. 507, 521–22, 144 A.2d 80 (1958) (quoting *Susquehanna Transmission Co. v. St. Clair*, 113 Md. 667, 672, 77 A. 1119 (1910)). In *Burnham,* the Court held that a "cotenant cannot by himself grant an easement that will bind his cotenants." *Id.* at 521, 144 A.2d 80. Similarly, in *Arbesman v. Winer*, 298 Md. 282, 468 A.2d 633 (1983), the Court noted that one tenant in common " 'has no power to make a lease of the entire estate that will be binding upon his cotenants without their consent.' " *Id.* at 294, 468 A.2d 633 (quoting *Cook v. Boehl*, 188 Md. 581, 593, 53 A.2d 555 (1947)).

Other jurisdictions have discussed this principle in the context of a loan on property. A review of these cases makes clear that a tenant in common who takes out a loan on jointly held property can encumber only his or her interest, and another cotenant's interest in the property cannot be used to satisfy the loan. *See Gonzalez v. Chase Home Finance LLC,* 37 So.3d 955, 957–58 (Fla.Dist.Ct.App.2010) (bank entitled to enforce and foreclose its mortgage only against the one-half interest of the mortgagor, but not against the one-half interest of the mortgagor's cotenant); *Brock v. Yale Mortgage Corp.,* 287 Ga. 849, 700 S.E.2d 583, 586 (2010) (cotenant who purported to convey by deed an interest in the entire property encumbered her half interest, but did not bind non-consenting cotenant's half interest); *Land America Commonwealth Title Ins. Co. v. Kolozetski,* 159 N.H. 689, 992 A.2d 681, 683–84 (2010) (cotenant could secure mortgage only on his half interest in property and could not encumber other cotenant's half interest).

There are limited circumstances where an otherwise unauthorized act by one cotenant is binding on another cotenant. This occurs if the nonconsenting cotenant subsequently af-

firms or ratifies the action. *See Kellejian v. Kesicki,* 126 Ariz. 12, 612 P.2d 63, 64–65 (Ariz.Ct.App.1980) (although cotenant did not consent to other cotenant's agreement to rent the property with an option to purchase, she ratified the act by continuing to accept option payments after she learned of the agreement); *Geary v. Taylor,* 166 Ky. 501, 179 S.W. 426, 428–29 (Ky.Ct.App.1915) (cotenants ratified lease by accepting and retaining rent payments).

In the present case, the evidence was clear that Ms. Anderson did not consent to, or subsequently ratify, Mr. Joseph's action in obtaining the loan encumbering the Property. Ms. Anderson consistently asserted that she had no knowledge of the flooding in the basement of the Property or of the Bank of America loan. Mr. Joseph confirmed the lack of consent to encumber the Property with the loan, testifying at the hearing that he did not discuss the flood in the basement or the loan with Ms. Anderson, and explaining: "We weren't talking, basically. She never spoke to me."

Under these circumstances, where there was no evidence for the circuit court to find that Ms. Anderson authorized Mr. Joseph to encumber the Property with the loan, the loan encumbered only Mr. Joseph's half interest in the Property. Accordingly, it should have been deducted solely from Mr. Joseph's share of the proceeds of the sale.

The division of proceeds should have been calculated by taking the gross amount due to the seller, $276,349.83,[6] and subtracting the $103,526.76 first mortgage, $27,532.55 settlement costs, $32.58 unpaid water bill, and $232.24 for hazard insurance,[7] leaving total proceeds of $144,793.26 to be distributed. Subtracting trustee fees of $2,511.73, and then dividing the resulting amount of $142, 281.53 according to each party's 50% interest, results in the sum of $71,140.77 to each party.

---

6.  The house was sold for $275,000, but an adjustment for county taxes brought the net due to seller to $276,349.83.

7.  Mr. Jansen had to return this amount to the title company subsequent to closing due to an error in the calculation of the hazard insurance paid as part of the first mortgage payoff.

Mr. Joseph's portion would be reduced by $49,552.79 to satisfy the Bank of America loan, and $12,000 for the agreed-upon prior attorney's fees, leaving him proceeds in the amount of $9,587.98.

The Trustee's calculations, which deducted the payment of the loan from the net proceeds of the sale of the Property prior to dividing the proceeds between the parties was erroneous. These calculations left Ms. Anderson with proceeds of $46,364.37, less than her 50% interest in the amount of $71,140.77, an improper division of the proceeds.

There remains a question, however, as to whether Mr. Joseph would be entitled to a credit for repairs he made to the house after the flood. Although Mr. Joseph did not specifically argue below that he was entitled to credit for the monies expended to repair the flooded basement and make improvements to the kitchen, it appears he was suggesting that when he explained that the loan was used to conduct needed repairs.[8]

Even assuming that Mr. Joseph sufficiently preserved the issue for our review, the evidence here does not support a credit for payments relating to repairs. The entitlement to contribution from a cotenant depends on the type of payment made. "Generally, one co-tenant who pays the mortgage, taxes, and other carrying charges of jointly owned property is entitled to contribution from the other." *Crawford v. Crawford*, 293 Md. 307, 309, 443 A.2d 599 (1982). *Accord Pino v. Clay*, 251 Md. 454, 456–57, 248 A.2d 101 (1968). With respect to repairs, however, the Court of Appeals has explained:

"[T]he general rule is that one cotenant is entitled to contribution from another for necessary repairs and improvements when they were made with the assent of the other, or the repairs were necessary for the preservation of the building or other erection on the land, and were done by

---

8. Mr. Joseph was not represented below, and as indicated, he did not file a brief in this Court.

one cotenant *after request of and refusal by the other cotenant . . . .*"

*Colburn v. Colburn,* 265 Md. 468, 477, 290 A.2d 480 (1972) (quoting *Woodcock v. Pope,* 154 Md. 135, 147, 140 A. 76 (1928)).

In *Colburn,* in the context of a complaint for an accounting, the Court of Appeals affirmed the trial court's refusal to give Mr. Colburn credit for repairs to rental property on the ground that he did not obtain authorization from Mrs. Colburn prior to making the repairs. *Id.* The Court stated:

> [F]actors such as the expediency of making necessary repairs, the possible obligations of third parties to make repairs and, indeed, the necessity of the repairs themselves are proper objects of consideration for all of the joint owners. Mr. Colburn's action in not informing his wife of the performance of the repairs, deprived her of the opportunity to make these determinations prior to the money being expended.

*Id.*

Similarly, here, the evidence shows that Mr. Joseph did not give Ms. Anderson the opportunity to determine the expediency or necessity of making the repairs prior to the money being expended. Moreover, Mr. Joseph did not show that the repairs here were necessary for the preservation of the house; he did not even introduce evidence of the specific repairs made.[9] Accordingly, a credit was not warranted by the evidence as a matter of law.

Accordingly, the Trustee's Report of Sale, which proposes a distribution of the proceeds of the sale of the Property that fails to give Ms. Anderson her 50% share of the proceeds, is improper. The circuit court abused its discretion in denying Ms. Anderson's Exception to the Trustee's Report of Sale.

**JUDGMENT DENYING EXCEPTION REVERSED. REMANDED FOR PROCEEDINGS CONSISTENT WITH**

---

9. There was no specific testimony at the hearing regarding what repairs were made or how much was spent for specific repairs.

THIS OPINION.  COSTS TO BE PAID BY APPELLEE, NERO JOSEPH.